832 A.2d 328

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PHILIP REINER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 26, 2003—Decided October 1, 2003.

Before Judges WECKER, LISA and FUENTES.

*Mueller, Russo & Warmington,* attorneys for appellant (*Gregory R. Mueller,* on the brief).

*Peter C. Harvey,* Acting Attorney General, attorney for respondent (*Adrienne B. Reim,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Defendant, Philip Reiner, appeals from a judgment entered after a trial de novo on appeal from the Newton Municipal Court pursuant to *R.* 3:23–8. The issue raised by this appeal is the permissible sentence for an individual convicted of a second offense for driving while intoxicated (DWI), *N.J.S.A.* 39:4–50, when the second offense occurs within a school zone as defined by *N.J.S.A.* 39:4–50(g), but the first DWI offense did not.

In an interlocutory appeal to the Law Division from rulings denying defendant a jury trial, defense counsel also argued that

the statute was ambiguous with respect to whether the penalties prescribed by sub-section (a) or sub-section (g) would apply to defendant, and therefore could not advise his client properly as to his exposure. On that issue, the Law Division judge offered his view, which was consistent with the municipal court judge's previously expressed view.[1]

The Law Division Judge said this:

I think that what happened when they drafted this statute is they increased the penalties for each situation. Those increases in penalties exceed the original penalties for multiple offenders, I believe.

So if your client—the point you're making is if a prior offense was a non-school zone and he gets convicted again for DWI but in a school zone, you're arguing it's a first offense under the statute. [the municipal court judge] argued you'll have to apply, I believe, the second aspect of the statute.

And what is appealing about his decision is if an individual convicted of DWI in a school zone for a—and it's a second DWI, if you apply the first penalty provisions for a school zone it's less than a second conviction under non-school zone. And I don't think you can do that.

When defendant was convicted and sentenced in municipal court, the judge addressed the question whether defendant was to be sentenced as a second offender under sub-section (g), or sub-section (a) of the DWI statute, N.J.S.A. 39:4–50.[2]

On defendant's appeal to the Law Division, based on the record in the municipal court, Judge Conforti found defendant guilty beyond a reasonable doubt on the DWI charge in a school zone, under N.J.S.A. 39:4–50(a) and (g). The judge merged three lesser motor vehicle charges—driving the wrong way on a one-way street, failure to stop before turning right on red, and failure to maintain his lane—with the DWI conviction. Defendant was sentenced as a second-offender pursuant to sub-section (g) and received the following sentence on the DWI charge: four days in

---

[1] At that point, defendant had not been found guilty in either court, and the judges' respective statements were not final decisions.

[2] The municipal court judge dismissed a charge under N.J.S.A. 39:4–50a for failure to submit to a breathalyzer test because defendant "was not advised of what the penalties will be if he refuses to take a breathalyzer test."

the Sussex County jail, seventy-five days service in the SLAP program,[3] a four-year suspension of driving privileges, sixty days of community service, a $1,500 fine, and various mandatory minimum penalties and assessments.

The evidence in the record establishes these facts. On Tuesday, October 10, 2000, defendant obtained a cash advance from a bank located in Newton Township. The Assistant Branch Manager noticed that the defendant appeared to be intoxicated. She smelled alcohol on his breath and noticed that his speech was slurred and that he was staggering. After the transaction was completed, defendant left the building. The manager, accompanied by a co-worker, followed defendant to the parking lot. There they saw him first "wandering the parking lot looking for his car" and then getting into a blue-colored jeep. Believing that defendant was intoxicated, the assistant manager telephoned the police.

Police Officer Dean Coppolella received a call from the police dispatcher informing him of a possible intoxicated driver in a blue jeep. The officer spotted defendant's blue jeep traveling down the center lane of a three-lane highway. The officer positioned his patrol car closely behind the jeep, which moved abruptly into the right-turn-only lane approaching an intersection.

The jeep wove outside the traffic lanes, twice crossing over the lines, and made a right turn at a red traffic light without coming to a stop. The officer then switched on his emergency lights and siren. The jeep proceeded for approximately one quarter mile before turning right down a one-way street, traveling in the wrong direction. It stopped after traveling approximately fifteen feet. A pick-up truck was coming from the opposite direction, and the driver of the pick-up stopped in front of the blue jeep.

The officer recognized the driver of the pick-up as a crossing guard who worked at two nearby intersections. The officer testified that there are three schools in the area. After further

---

[3] Defendant was actually sentenced to seventy-nine days in jail, but permitted to serve seventy-five days in the SLAP program in lieu of jail.

investigation, the officer determined that defendant came to a stop approximately 550 feet from a grammar school. He made that calculation by reference to trial exhibit S-3, an "official street map for the Town of Newton that was prepared by [the] Town Engineer" and dated October 24, 2000 (two weeks after the incident).

At the scene, the officer approached the vehicle and asked defendant for his credentials. Before giving his credentials to the officer, defendant twice dropped them in his own lap. The officer detected a strong odor of alcohol on defendant and noticed that his speech was slurred, making it difficult to understand. Defendant's eyelids were "very droopy." Defendant also told the officer he was traveling to the "Wantage section" of Newton, a nonexistent location. When asked if he had been drinking, defendant stated that he had had a couple of drinks.

The officer asked defendant to exit the vehicle. Defendant had difficulty standing and at one point grabbed onto the side of the jeep's door. When asked to stand on one leg for thirty seconds, defendant could only maintain his balance for a few seconds. During the next test, defendant was unable to walk (as instructed) heel-to-toe over a straight line for nine steps, pivot on his left foot and walk back nine steps. Based upon the officer's observations and defendant's failure to perform the field sobriety examinations, he was placed under arrest. Defendant refused to take a breathalyzer examination at the police station. Additional field-type sobriety tests were administered at the station, which defendant did not perform successfully. The State later determined that defendant had one previous DWI conviction.

After trial de novo on appeal in the Law Division, Judge Conforti addressed the sentencing issue and concluded: "[I]t would be a second offense DWI with enhancement for a school zone."

On appeal, defendant raises these arguments:

POINT I

N.J.S.A. 39:4-50(g) IS UNCONSTITUTIONALLY VAGUE BECAUSE IT FAILS TO PROVIDE OFFENDERS WITH ADEQUATE NOTICE OF PENALTIES

AND FAILS TO ADEQUATELY DESCRIBE HOW THE STATUTE IS TO BE APPLIED.

POINT II

MR. REINER WAS ENTITLED TO A JURY TRIAL AND GRAND JURY PRESENTMENT BECAUSE *N.J.S.A.* 39:4–50(g), AS INTERPRETED, AUTHORIZED IMPRISONMENT IN EXCESS OF SIX MONTHS, AND BECAUSE THE TOTALITY OF PENALTIES UNDER THE STATUTE RENDERED THE OFFENSE SUFFICIENTLY SERIOUS UNDER THE SIXTH AMENDMENT.

POINT III

DEFENDANT'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE THE OFFICER STOPPED MR. REINER BASED ON AN ANONYMOUS TIP, WITHOUT KNOWING THE CREDIBILITY OF THE INFORMER, AND WITHOUT OBTAINING CORROBORATING FACTS.

POINT IV

DEFENDANT'S CONVICTION FOR DRIVING WHILE INTOXICATED WITHIN 1000 FEET OF A SCHOOL SHOULD BE VACATED BECAUSE DEFENDANT WAS NEVER CHARGED WITH THIS OFFENSE IN THE COMPLAINT, AND BECAUSE THE STATE NEVER CALCULATED THE DISTANCE FROM THE LOCATION LISTED IN THE COMPLAINT.

POINT V

THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT OPERATED HIS VEHICLE WITHIN 1000 FEET OF A SCHOOL.

POINT VI

DEFENDANT SHOULD NOT HAVE BEEN SENTENCED AS A SECOND SCHOOL ZONE OFFENDER.

POINT VII

DEFENDANT'S SENTENCE WAS EXCESSIVE AND THE COURT DOUBLE COUNTED THE 1000 FOOT ELEMENT AS AN AGGRAVATING FACTOR.

Our review of the record and the briefs satisfies us that there is insufficient merit to the arguments raised in Points II, III, IV, V, and VII to warrant extended discussion in a written opinion. *See* R. 2:11–3(e)(2). As to those points, we will add only brief comments. We also reject defendant's arguments set forth in Points I and VI, and therefore affirm. However, those arguments warrant further discussion.

As to Point III, we agree with the Law Division judge that the police officer had probable cause to stop defendant in his vehicle after receiving information indicating that he appeared to be intoxicated and then was seen entering his vehicle and driving

off. "This was not an anonymous tip. This was a citizen informant, a person who was employed at a local bank, who made certain acute observations about [defendant]." Indeed, the citizen testified at trial that defendant "appeared disoriented, his breath smelled of alcohol and he was staggering as he walked." The officer then observed defendant's erratic driving and numerous motor vehicle violations.

■ With respect to Point IV, while the initial complaint cited defendant for violation of *N.J.S.A.* 39:4–50, without specifying subsection (g), the police report prepared shortly thereafter and provided to defendant long before trial put him on notice that the State would seek to prove the offense occurred in a school zone and that he was subject to the enhanced penalty provided by that section. We find no due process violation in that regard.

■ With respect to Point V and the school zone evidence, Officer Coppolella referred to a reliable map of the area obtained from the municipal offices and prepared by the municipal engineer, although it appears not to have been "certified." The officer described his own observation of the distances as well as the map and its scale. Section (g) *permits* the State to prove the school zone location by offering a certified map; it does not *require* the State to offer such a map. The judge's conclusions that the "the map is a trustworthy document for the Court to consider," and that the State had proved that the distance from school property was less than 1,000 feet, is amply supported by credible evidence. *See State v. Locurto*, 157 *N.J.* 463, 724 *A.*2d 234 (1999).

■ We now turn to the arguments raised by points I and VI with respect to the DWI statute itself. *N.J.S.A.* 39:4–50(a) provides in relevant part:

> *Except as provided in subsection (g) of this section,* a person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.10% or more . . . shall be subject: (1) For the first offense, to a fine of not less than $250 nor more than $400.00 and a period of detainment [pursuant to the Intoxicated Driver Resource Centers] a term of imprisonment of not more than 30 days and [suspension of driving privileges] for a period of not less than six months

nor more than one year ... (2) For a second violation, a person shall be subject to a fine of not less than $500.00 nor more than $1,000.00, and ... community service for a period of 30 days ... and ... imprisonment for a term of not less than 48 consecutive hours ... nor more than 90 days, and [suspension of driving privileges] for a period of two years.

[Emphasis added.]

In 1999, the Legislature amended the DWI statute to add subsection (g), part of an enactment known as "Filomena's Law." *L.* 1999, *c.* 185, para. 5. The law was enacted in response to the death of Filomena Coppola, a crossing guard who was killed by a drunk driver while protecting children from the path of his vehicle.

*N.J.S.A.* 39:4–50(g) provides in relevant part:

When a violation of this section [*N.J.S.A.* 39:4–50] occurs while: (1) on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property; (2) driving through a school crossing as defined in *R.S.* 39:1–1 if the municipality, by ordinance or resolution, has designated the school crossing as such; or (3) driving through a school crossing as defined in *R.S.* 39:1–1 knowing that juveniles are present if the municipality has not designated the school crossing as such by ordinance or resolution, the convicted person shall: for a first offense, be fined not less than $500 or more than $800, be imprisoned for not more than 60 days and have his license ... suspended for a period of not less than one year or more than two years; for a second offense, be fined not less than $1,000 or more than $2,000, perform community service for a period of 60 days, be imprisoned for not less than 96 consecutive hours ... nor more than 180 days ... and have his license ... suspended for a period of 20 years.

Both sections (a) and (g) provide additionally increased penalties for a third or subsequent offense.

There is no dispute that defendant was previously convicted of one DWI offense. It is also undisputed that defendant was convicted and sentenced for that offense under section (a). Thus while this was defendant's second conviction of a DWI offense, it was his first conviction for DWI within a school zone, punishable under section (g).

Defendant contends that section (g) is unconstitutionally vague with respect to the applicability of its second offender penalty provision because it does not expressly state that it applies irrespective of whether or not the first offense was a school zone offense. He contends that the court's interpretation of section (g)

would result in disparate treatment among offenders. The disparity defendant notes is that two DWI second offenders, one of whom was convicted first under section (a) and second under section (g); the other of whom was convicted first under section (g) and second under section (a), would be subject to different penalties for the second offense, depending upon whether the first or the second DWI occurred in a school zone. Defendant fails to note that if the first offense had been the school zone offense, the offender would have received enhanced section sub-section (g) penalties for that conviction, narrowing the difference between the total penalties received by each driver. More significantly, there is a rational basis for the purportedly disparate sentences, in that when the second offense occurs in a school zone, it can be viewed as an escalating violation.

Under the ruling we affirm, the nature of the second offense determines the applicable sentencing provision. The State contends that we should affirm defendant's sentence because the legislative intent to punish school zone offenses more severely than "ordinary" DWI offenses is clear, and it would be illogical to punish defendant only as a second offender under sub-section (a) rather than sub-section (g). Apparently recognizing that second-offender penalties under sub-section (a) alone would be unjustified, defendant further argues, as did his attorney in the municipal court,

> that the way the legislature intended the 1,000 foot enhancement to work, is that the 1,000 foot enhancement should be run consecutive to the traditional second offender penalties. So, in other words, [defendant] would be sentenced as a second offender DWI, but a first offender school zone, because this would be his first offense in the school zone, and those two penalties should be run consecutively.

Defendant proposes consecutive sentences for the same school zone DWI conviction, that is, a sentence as a first offender under (g), and a consecutive sentence as a second offender under (a). The practical effect, were we to adopt defendant's reasoning, would be to suspend his driving privileges for three years instead of the four years imposed under sub-section (g) as a second offender. We reject that proposal as without basis in the statute

or the law. To impose consecutive penalties for the same conduct would violate principles of double jeopardy. We would be sentencing defendant to consecutive terms for a lesser offense that merges with the greater. *Cf. N.J.S.A.* 2C:1–8a(1). We would also be sentencing defendant for two offenses that "differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." *N.J.S.A.* 2C:1–8a(4).

The legislative history, while not determinative, does shed light on the sub-section (g) penalty provisions. The original bills, Senate No. 854 and Assembly No. 1821, were virtually identical respecting the proposed addition of more severe penalties for DWI in a school zone.[4] However, they did so by adding to *N.J.S.A.* 39:4–50(a) the following language, which was never adopted.

> When a violation of this section occurs while on or within 1,000 feet of any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, *the fine, period of community service, term of imprisonment and period of license forfeiture imposed upon the convicted person shall be double that which would otherwise be imposed under paragraphs (1), (2) or (3) of this subsection [a].*

The legislative history includes identical Senate and Assembly Statements accompanying the original bills, stating that the bill:

> would double the penalties imposed on a person convicted of driving a motor vehicle under the influence of alcohol or drugs while on or within 1,000 feet of any school property.

> Under current law, the penalties for a first drunk driving offense include a fine of $250 to $400, possible imprisonment for up to 30 days and loss of a driver's license for six months to one year. Under the bill, the penalties for a first offense of drunk driving while on or within 1,000 feet of a school property would be a fine of $500 to $800, possible imprisonment for up to 60 days and loss of a driver's license for up to two years. The penalties for second, third and subsequent drunk driving offenses committed while on or within 1,000 feet of school property also would be doubled.

---

4 Those bills also proposed amendments to *N.J.S.A.* 2C:11–5b (vehicular homicide), *N.J.S.A.* 2C:12–1 (assault by auto), *N.J.S.A.* 39:3–4a (driving while suspended), *N.J.S.A.* 39:4–50.4a (breathalyzer refusal), to enhance penalties for these offenses when committed in a school zone, and *N.J.S.A.* 2C:64–1a (forfeiture).

However, it was the Senate Substitute for Senate No. 854 that was eventually enacted and amended *N.J.S.A.* 39:4–50. Our search of the legislative history reveals no written record explaining the change in language or structure from the original bill. The substitute bill added sub-section (g) and changed the wording of the penalty provision for a school zone offense. It also broadened the definition of a "school zone" to include school crossings. The original bills provided enhanced penalties only for offenses committed within 1,000 feet of school property, thereby omitting precisely the situation in which Filomena Coppola was killed—a school crossing, which may or may not be located within 1,000 feet of a school. This omission was inconsistent with the Statements attached to the original bills and quoted in part above, which began as follows:

> This bill creates stiff new penalties for drunk driving and other serious traffic offenses when committed in the vicinity of a school. It is intended to honor Filomena Coppola, a well-known and popular crossing guard who was recently struck and killed by an alleged drunk driver while protecting two eight-year old girls at a crossing near Radcliffe Elementary School in Nutley. It is the sponsor's wish that "Filomena's Law" will make the often busy streets and roads near schools safer for the children who must daily cross them, and for the dedicated persons who guard their crossing.
>
> [Statements to Senate No. 854 and Assembly No. 1821]

The Senate Substitute for Senate No. 854, the version of the bill that was enacted as *L.* 1999, *c.* 185, included a more comprehensive definition of a school zone, which was originally added by the Senate Law and Public Safety Committee and referenced in the Committee's Statement dated October 15, 1998. That definition includes school crossings, all as part of new sub-section (g), along with its enhanced penalty provisions. In the face of this history, we find no evidence of legislative intent to reduce the enhanced penalties originally provided by the Senate and Assembly bills—to double the otherwise applicable sub-section (a) penalties when a DWI offense occurs in a school zone.

It is readily apparent that the penalties or penalty ranges provided for an offense under sub-section (g) of the DWI statute, that is, for driving while intoxicated while in a school zone, are in

fact double those provided under sub-section (a). A first offender under sub-section (a) is subject to a fine of $250 to $400, a jail sentence of two to thirty days, suspension of driving privileges for six months to one year, and attendance at the Intoxicated Driver Resource Center (IDRC). By comparison, a first offender subject to punishment under sub-section (g) is subject to a fine of $500 to $800, a jail sentence up to sixty days, and suspension of driving privileges for one to two years.[5]

A second offender under sub-section (a) is subject to a fine of $500 to $1,000, a jail sentence of two to ninety days, and license suspension for two years. By comparison, a second offender subject to punishment under sub-section (g) is subject to a fine of $1,000 to $2,000, a jail sentence of four to one-hundred-eighty days, and suspension of driving privileges for four years.[6] Thus the statutory scheme as enacted in both legislative houses is consistent with their previously expressed intent, in Committee Statements, to "double" the penalties for a school zone offense.

We have also considered whether there is a sentencing analogy to the drug cases addressed in *State v. Dillihay*, 127 *N.J.* 42, 45, 601 *A.*2d 1149, 1150 (1992), and *State v. Parker*, 335 *N.J.Super.* 415, 419, 762 *A.*2d 690, 692 (App.Div.2000). Each of those cases held that when a third degree conviction for a school zone offense under *N.J.S.A.* 2C:35–7 merges with a first or second degree conviction under another section of the drug laws, the mandatory minimum period of parole ineligibility required by the school zone statute survives merger and must be included with the longer base

---

[5] For a second offense under sub-section (a), mandatory community service of thirty days is also imposed, and either an ignition interlock device installed or the defendant's registration and license plates revoked for two years.

[6] As defendant correctly notes, sub-section (g), which in other respects imposes double the penalties under the parallel provisions of sub-section (a), omits the required IDRC participation imposed on a first offender and the interlock device imposed on a second and third offender by sub-section (a). However, we decline to draw the inference defendant suggests: that he should be sentenced under both sub-sections (a) and (g).

sentence on the more serious offense. However, in each of those cases, the result of the combined sentence did not exceed the aggregate base term of the higher degree offense, while it effected the obvious legislative intent to impose the minimum parole ineligibility term required on the school zone offense. No comparable result can be accomplished by defendant's proposed consecutive sentences, or any other legal combination of the sentencing provisions of sub-sections (a) and (g).[7]

In reaching our conclusion, we have considered whether sub-section (g) is sufficiently ambiguous to fall under the principle that "penal statutes that are open to more than one construction must be construed strictly against the State." *State v. Churchdale Leasing, Inc.* 115 *N.J.* 83, 102, 557 *A.*2d 277, 287 (1989). When text can be read two ways, it is appropriate to look to extrinsic factors, including the legislative history, purpose, policy, and context of the enactment to discern the intended meaning. *State v. Livingston,* 172 *N.J.* 209, 218, 797 *A.*2d 153, 158 (2002); *State v. Tischio,* 107 *N.J.* 504, 510–14, 519, 527 *A.*2d 388, 390–93, 395–96 (1987). In *Tischio,* the Court interpreted *N.J.S.A.* 39:4–50(a) to permit admission of evidence of a breathalyzer test administered within a reasonable time and to bar extrapolation evidence. Writing for the majority, Justice Handler said: "We are ... enjoined to give our drunk-driving statutes the pragmatic and flexible interpretations necessary to effectuate the Legislature's regulatory aims, while honoring the due process limitations necessarily attendant upon the law's penal sanctions." *Id.* at 512, 527 *A.*2d at 392.

In criminal cases generally, the rule of lenity calls for strict construction of an ambiguity to favor the defendant. *Ibid.* But the rule of strict construction is grounded in due process concerns. *Churchdale Leasing, supra,* 115 *N.J.* at 102, 557 *A.*2d at 287. We

---

[7] We are not called upon in this case to consider whether the sub-section (a) second offender penalty that is omitted from sub-section (g), namely the installation of an ignition interlock device, must be imposed.

discern no due process infringement in this case to require a different construction or application of the DWI statute. Our recent decision in *State v. Olsvary*, 357 *N.J.Super.* 206, 214, 814 *A.*2d 1121, 1126 (App.Div.), *certif. denied*, 177 *N.J.* 222, 827 *A.*2d 290 (2003), is distinguishable. There we reversed an extended term for a specific fourth-degree offense because there was *no* statutory parameter provided for such a term.

As our dissenting colleague suggests, the Legislature could have drafted the school-zone amendment to the DWI statute in different and even clearer terms. Less than perfect drafting, however, does not bar enforcement of a sentencing provision in accordance with the evident intent of the Legislature. *See, e.g., State v. White*, 98 *N.J.* 122, 131–32, 484 *A.*2d 691, 696 (1984); *In re Suspension of DeMarco*, 83 *N.J.* 25, 36–37, 414 *A.*2d 1339, 1344–45 (1980). As Chief Justice Wilentz wrote in *State v. Maguire*, 84 *N.J.* 508, 514, 423 *A.*2d 294, 297 (1980), "In resolving these questions of statutory construction, we are mindful that our task is to effectuate the legislative intent in light of the language used and the objects sought to be achieved." [Footnote omitted]. *See also N.J.S.A.* 2C:1–2c, setting forth this general rule of construction:

The provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section[8] and the special purposes of the particular provision involved.

We reject the contention that sub-section (g) is unconstitutionally vague. Sub-sections (a) and (g) together are unambiguous in defining the proscribed behavior. The only question raised by this case is the punishment for a second DWI when that second DWI is committed in a school zone.

---

8 *N.J.S.A.* 2C:1–2a sets forth the "general purposes" of the Code, including, among others, "(1) To . condemn conduct that ... inexcusably inflicts or threatens serious harm to individual or public interests; (2) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized ...; [and] (4) To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction."

In our view, this defendant committed a second DWI offense, made more serious than it otherwise would have been because it was committed in a school zone. He is a second offender who committed his second DWI in a school zone, and sub-section (g) provides the penalty for a second DWI offender who commits the second DWI offense in a school zone.

There is no merit to defendant's argument in Point V that the sentence was otherwise excessive.

Affirmed.

FUENTES, J.A.D., dissenting.

My colleagues in the majority have concluded that defendant is subject to the enhanced penalties expressly reserved for second offenders under *N.J.S.A.* 39:4–50(g), despite the fact that this is the first time he has committed this type of offense. I disagree and therefore dissent. The majority's conclusion runs counter to well established principles of statutory construction, undermines the policy of deterrence underlying the linkage between offense-specific recidivism and the escalation of punishment and needlessly casts into doubt the statute's constitutionality.

In adopting *N.J.S.A.* 39:4–50(g) the Legislature created a new and separate motor vehicle offense of driving while intoxicated within 1,000 feet of school property or through a school crossing. This offense has clearly delineated elements:

(1) [driving while intoxicated] on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property; [or]

(2) driving [while intoxicated] through a school crossing as defined in R.S.39:1–1 if the municipality, by ordinance or resolution, has designated the school crossing as such; or

(3) driving [while intoxicated] through a school crossing as defined in R.S.39:1–1 knowing that juveniles are present if the municipality has not designated the school crossing as such by ordinance or resolution.

The State bears the burden of proving these statutory elements beyond a reasonable doubt. In recognition of this burden of proof, the statute provides for a specific means of establishing

whether the offense occurred within 1,000 feet of any school property. It also disallows four potential affirmative defenses by declaring as "irrelevant to the imposition of sentence" for convictions based on (1) DWI within 1,000 feet of school property; and (2) DWI through a school crossing which has been duly designated by municipal ordinance that: (i) defendant was unaware that the prohibited conduct took place while on or within 1,000 feet of any school property; (ii) or while driving through a school crossing; or (iii) that no juveniles were present on the school property or crossing zone at the time of the offense; or (iv) that the school was not in session.

As a separate offense, subsection (g) also has a separate sentencing scheme intended to punish and deter the specific misconduct delineated therein. The Legislature made this clear when it declared that *"except as provided in subsection (g)"* a person convicted of DWI will be subject to the sentencing provisions in subsection (a). Thus, the sentencing guidelines of subsection (g) can only be triggered when a defendant is convicted of committing that particular offense.

A court's principal duty when construing a statute is to consider its plain meaning. *State v. Hoffman,* 149 *N.J.* 564, 578, 695 *A.*2d 236, 243 (1997); *State v. Marchiani,* 336 *N.J.Super.* 541, 546, 765 *A.*2d 765, 768 (App.Div.), *certif. denied,* 168 *N.J.* 292, 773 *A.*2d 1156 (2001). " 'As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent.' " *State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459, 463 (2001) (quoting *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399, 402 (1982)).

Here, the plain language used by the Legislature excludes any interpretation applying second offender subsection (g) penalties based solely on a defendant's status as a second offender under subsection (a). To hold otherwise would create a disconnect between the escalation of sanctions and a recurrence of the

offending conduct. Such a prospect would violate basic fairness and directly undermine well established principles of criminal justice. *See N.J.S.A.* 2C:1–2b.

There is no textual support for the majority's conclusion. Adoption of the majority's interpretation would be tantamount to redrafting subsection (g) so that in lieu of the portion that begins "for a second offense . . .," the following language is substituted: "for an offense under this sub-section committed by one who has previously been convicted under either this sub-section (g) or subsection (a). . . ."

If the Legislature intended such language it would have written it into the statute. It is not our job as judges to rewrite a statute so it may comport with our notion of what it should have said. As noted by Justice Clifford,

> Uncompromising enforcement of laws designed to rid our highways of the scourge of the drunk driver ranks only slightly behind the veneration of motherhood and probably slightly ahead of a robust hankering after apple pie in the hierarchy of values firmly embedded in our culture. And that surely is as it should be. The Court outdoes itself, however, in support of that eminently desirable enforcement objective by effectively writing a new statute—one that establishes wholesome social policy and hence might well attract my support were I a member of the legislative branch. But I am not, any more than are my colleagues, so it does not. In my view the Court has "ventured beyond the bounds of 'interpretation' or 'construction' and into the realm of 'creation' and 'substitution.'" (citation omitted).
>
> [*State v. Tischio,* 107 *N.J.* 504, 522, 527 *A.*2d 388, 397 (1987), (Clifford, J., dissenting).]

However, to the extent that there may be an ambiguity as to the applicable sentencing guidelines, it must be resolved against the State and in defendant's favor. *State v. Alexander,* 136 *N.J.* 563, 573, 643 *A.*2d 996, 1001 (1994); *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294, 297 (1980).

As previously noted, defendant here committed two separate offenses, triggering the application of two separate sentencing schemes. First, he operated his motor vehicle while intoxicated. This is the second time defendant has been convicted of this offense. Therefore, he should be sentenced as a second offender under subsection (a). Defendant also operated his motor vehicle

while intoxicated and within 1,000 feet of school property, in violation of subsection (g). This is the first time he has been convicted of this offense. He should, therefore, be sentenced as a first offender under subsection (g), consecutive to his second offender penalties under subsection (a). This approach would eliminate the needless conflict created by the majority between the offenses found in subsections (a) and (g). There is simply no need for one offense to be subsumed by the other. The sections serve separate and distinct legislative goals and target separate and distinct conduct.

Subsection (g) was signed into law on August 19, 1999. The majority decision leaves the door open for a defendant to be sentenced as a second offender under subsection (g) based on a violation under subsection (a) which predated the passage of subsection (g). If subsection (g) is not solely a recidivist statute, but a separate and distinct offense with clearly enumerated elements, as I believe it is, then the majority's ruling would violate the *Ex Post Facto* Clauses of the federal and state constitutions. *U.S. Const.*, art. I, § 10, cl. 1; *N.J. Const.*, art. IV, § 7, ¶ 3; *See also Gryger v. Burke*, 334 *U.S.* 728, 732, 68 *S.Ct.* 1256, 1258, 92 *L.Ed.* 1683 (1948); *State v. Oliver*, 162 *N.J.* 580, 588, 745 *A.*2d 1165, 1169 (2000).

It is well settled that a statute should be interpreted so that, whenever possible, it does not conflict with the Constitution. *Jones v. United States*, 526 *U.S.* 227, 229, 119 *S.Ct.* 1215, 1222, 143 *L.Ed.*2d 311, 323 (1999); *State v. Stanton*, 176 *N.J.* 75, 92, 820 *A.*2d 637, 647 (2003). The majority's decision needlessly runs afoul of this injunction by engrafting language onto *N.J.S.A.* 39:4-50(a), thereby creating an ambiguity where none exists to achieve a desired result.