850 A.2d 1252

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PHILIP REINER, DEFENDANT–APPELLANT.

Argued April 27, 2004—Decided July 7, 2004.

*Gregory R. Mueller* argued the cause for appellant (*Mueller, Russo & Warmington,* attorneys; *Mr. Mueller* and *Evan M. Levow,* on the briefs).

*Adrienne B. Reim,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

*Timothy M. Donohue* argued the cause for *amicus curiae,* Association of Criminal Defense Lawyers of New Jersey (*Arleo & Donohue,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal we are called on to determine whether the heightened penalties contained in *N.J.S.A.* 39:4–50(g) (subsection (g)), applicable upon conviction of a second offense of driving while intoxicated (DWI) within 1,000 feet of school property, may be imposed when a defendant's first DWI offense did not occur within 1,000 feet of school property. The predicate "first offense" here involved a conviction and sentence under *N.J.S.A.* 39:4–50(a) (subsection (a)). A divided Appellate Division held that the subsection (g) second-offender penalties applied in the foregoing circumstances. *State v. Reiner,* 363 *N.J.Super.* 167, 182, 832 *A.*2d 328 (2003). We now reverse and remand.

## I.

A full factual recitation appears in the decision of the Appellate Division. *Id.* at 169–72, 832 *A.*2d 328. We restate only the basic facts necessary for our disposition.

Prior to the events giving rise to this appeal, defendant, Phillip Reiner, had been convicted of DWI under subsection (a). On October 10, 2000, the Newton Police Department charged defendant with: (I) DWI contrary to *N.J.S.A.* 39:4–50(a); (II) refusal to submit to a breathalyzer test contrary to *N.J.S.A.* 39:4–50.2; (III) driving the wrong way on a one-way street contrary to *N.J.S.A.* 39:4–85.1; (IV) failure to stop before turning right on red contrary to *N.J.S.A.* 39:4–115; and (V) failure to maintain a lane contrary to *N.J.S.A.* 39:4–88.[1] At a case management conference on October 31, 2000, defendant was advised that the State would be charging him also with DWI within 1,000 feet of school property contrary to subsection (g), as well as with refusal to take a breathalyzer after having been stopped within 1,000 feet of school

---

[1] We note that the summons issued for the *N.J.S.A.* 39:4–50 offense did not specify subsection (a) expressly. That is the obvious inference, however, in that defendant was served simultaneously with a summons for violation of *N.J.S.A.* 39:4–50.2, which is a non-school zone offense.

property contrary to *N.J.S.A.* 39:4–50.4 (collectively, the "school zone charges").

The municipal court rejected a pre-trial contention by defendant that he did not receive adequate notice of the school zone charges against him and three days of trial ensued. The court found defendant guilty of DWI within 1,000 feet of school property and guilty of all other charges, except refusal to take a breathalyzer after having been stopped within 1,000 feet of school property. The municipal court sentenced defendant consistent with the penalties for a second-time offender under subsection (g), specifically imposing: ninety-six hours in jail; seventy-five days at the Sheriff's Labor Assistance Program (SLAP) for having driven intoxicated in a school zone when children were present; a four year suspension of driver's license; sixty days of community service; and forty-eight hours at the Intoxicated Driver Resource Center. The court also imposed a $1,500 fine, and other penalties and fees.

The Law Division, on *de novo* review, similarly held that defendant had adequate notice that he was being charged with DWI in a school zone, and affirmed the municipal court's determination that the second-offense penalties of subsection (g) applied to defendant's current DWI conviction. The court also affirmed the sentence imposed by the municipal court for defendant's DWI conviction.[2]

A divided Appellate Division affirmed. *Reiner, supra,* 363 *N.J.Super.* at 182, 832 *A.2d* 328. The majority determined that defendant received adequate notice that he was being charged under subsection (g), *id.* at 174, 832 *A.2d* 328, and held that defendant should be sentenced as a second-time offender pursuant to subsection (g), even though he had no prior convictions for DWI

---

[2] The Law Division correctly merged defendant's convictions for driving the wrong way on a one-way street, failure to stop before turning on red, and failure to maintain a lane into defendant's DWI conviction. *Reiner, supra,* 363 *N.J.Super.* at 170, 832 *A.2d* 328.

within a school zone. *Id.* at 175–82, 832 *A.2d* 328. There was a dissent in respect of defendant's treatment as a second-time offender under subsection (g). The dissent found *N.J.S.A.* 39:4–50 to be vague in respect of whether two convictions under subsection (g) were necessary for a defendant to be sentenced as a repeat offender under the terms of that subsection. *Id.* at 183–84, 832 *A.2d* 328 (Fuentes, J.A.D., dissenting). The dissent reconciled the ambiguity by concluding that subsections (a) and (g) are separate offenses with separate sentencing schemes. *Id.* at 182–85, 832 *A.2d* 328 (Fuentes, J.A.D., dissenting).

Defendant appealed based on the dissent below. *R.* 2:2–1(a)(2). We also granted defendant's petition for certification limited to the question whether defendant had adequate notice of the school zone charges. 178 *N.J.* 451, 841 *A.2d* 89 (2004).

## II.

### A.

Like all matters that require interpretation of a statute, our goal of implementing the Legislature's intent begins with the text of the statute. If the meaning of the text is clear and unambiguous on its face, we enforce that meaning. *State v. Brannon*, 178 *N.J.* 500, 505–06, 842 *A.2d* 148 (2004); *State v. Thomas*, 166 *N.J.* 560, 567, 767 *A.2d* 459 (2001). If the language admits to more than one reasonable interpretation, we may look to sources outside the language to ascertain the Legislature's intent. *Brannon, supra,* 178 *N.J.* at 507, 842 *A.2d* 148; *State v. Pena,* 178 *N.J.* 297, 307, 839 *A.2d* 870 (2004) (quoting *Thomas, supra,* 166 *N.J.* at 567, 767 *A.2d* 459). When extrinsic sources cannot clarify the meaning of ambiguous language, we employ the canon of statutory construction that counsels courts to construe ambiguities in penal statutes [3] in favor of defendant. *State v. Livingston*, 172

---

[3] In *State v. Negran,* 178 *N.J.* 73, 83, 835 *A.2d* 301 (2003), we discussed the penal nature of motor vehicle violations that, while not "crimes," are "petty offenses."

*N.J.* 209, 218, 797 *A.2d* 153 (2002); *State v. Valentin,* 105 *N.J.* 14, 18, 519 *A.2d* 322 (1987). Thus, we turn first to the operative text.

*N.J.S.A.* 39:4–50 is entitled "Driving while intoxicated." Two subsections concern us. Subsection (a), which states generally the elements of and punishments for DWI, provides, in relevant part:

> Except as provided in subsection (g) of this section, a person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.10% or more ... shall be subject: (1) For the first offense, to a fine of not less than $250 nor more than $400.00 and a period of detainment [pursuant to the Intoxicated Driver Resource Centers] a term of imprisonment of not more than 30 days and [suspension of driving privileges] for a period of not less than six months nor more than one year ... (2) For a second violation, a person shall be subject to a fine of not less than $500.00 nor more than $1,000.00, and ... community service for a period of 30 days ... and ... imprisonment for a term of not less than 48 consecutive hours ... nor more than 90 days, and [suspension of driving privileges] for a period of two years.
>
> [*N.J.S.A.* 39:4–50(a).] [4]

Subsection (g), added in 1999, punishes DWI committed within a school zone:

> (g) When a violation of this section occurs while:
>
> (1) on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property;
>
> (2) driving through a school crossing as defined in R.S.39:1–1 if the municipality, by ordinance or resolution, has designated the school crossing as such; or
>
> (3) driving through a school crossing as defined in R.S.39:1–1 knowing that juveniles are present if the municipality has not designated the school crossing as such by ordinance or resolution, the convicted person shall: for a first offense, be fined not less than $500 or more than $800, be imprisoned for not more than 60 days and have his license to operate a motor vehicle suspended for a period of not less than one year or more than two years; for a second offense, be fined not less than $1,000 or more than $2,000, perform community service for a period of 60 days, be imprisoned for not less than 96 consecutive hours, which shall not be suspended or served on probation, nor more than 180 days, except that the court may lower such term for each day, not exceeding 90 days, served performing community service in such form and on such terms as the court shall deem

---

[4] The version of *N.J.S.A.* 39:4–50(a) quoted in text is the version that was in effect at the time of defendant's arrest. The Legislature since has amended the provision.

appropriate under the circumstances and have his license to operate a motor vehicle suspended for a period of not less than four years....

[*N.J.S.A.* 39:4–50(g).] [5]

The parties and opinions below differ in respect of the interrelationship between the foregoing subsections. The State and Appellate Division majority believe that subsections (a) and (g) are textually linked. They find that inclusion of the phrase "[e]xcept as provided in subsection (g)" in subsection (a) demonstrates that subsection (g) contains heightened punishments for DWI while in a school zone that are sensible only if subsection (g) is viewed as a sentencing enhancer. Stated differently, (g) builds on the more general elements of (a). In addition, the proponents of that view contend that the language, "[w]hen a violation of this *section* occurs," (emphasis added), refers to *N.J.S.A.* 39:4–50 as a whole, and not to subsection (g) in particular. The State considers the use of the word "section" to exemplify the "tongue-and-groove" approach of the subsections, and the integrated nature of *N.J.S.A.* 39:4–50 in general.

The contrary view espoused by defendant and the dissent below emphasizes that the use of separate subsections for subsections (a) and (g) evidences a legislative intent to treat them as distinct offenses and that the introductory phrase "[e]xcept as provided in subsection (g)" promotes the notion of separation, rather than integration, of the subsections. *Reiner, supra,* 363 *N.J.Super.* at 183, 832 *A.*2d 328 (Fuentes, J.A.D., dissenting). Further, defendant claims that ambiguity arises from two other considerations: (1) subsection (g) does not specify whether the fact that a DWI offense occurred in a school zone is an element, which must be proved by the State beyond a reasonable doubt, or a sentencing consideration; and (2) subsection (g) does not state expressly that its penalties apply irrespective of whether any of a defendant's prior DWI convictions were for a school zone offense. In addition,

---

[5] Both subsections (a) and (g) impose penalties for third-time and subsequent DWI offenders. Because defendant is only a second-time offender, those third-time-offender (and subsequent-offender) penalties are not addressed further.

we note that subsection (g) has an express internal reference indicating that the provision sets forth a separate offense, *i.e.*, subsection (g) refers to "a prosecution under paragraph (1) of this subsection" when describing the form of map that might be used to establish the school zones within a community.

We mention lastly defendant's argument concerning the disparate penalties occasioned by the State's interpretation of subsections (a) and (g). Under the State's interpretation, a person first convicted under subsection (g) and then subsection (a) would receive aggregate penalties less grave than a person, such as defendant, convicted first under subsection (a) and subsequently under subsection (g),[6] despite engaging in virtually the same conduct—with one DWI offense taking place within a school zone, and one outside a school zone. The Appellate Division determined that "there is a rational basis for the purportedly disparate sentences, in that when the second offense occurs in a school zone, it can be viewed as an escalating violation." *Reiner, supra*, 363 *N.J.Super.* at 176, 832 *A.*2d 328. However, a person whose first DWI offense occurred in a school zone has shown the same propensity to flout motor vehicle laws, and in an egregious way— by endangering the lives of children. Punishing both such persons equally would be a rational result as well.

Reasonable arguments have been advanced for both interpretations of the relationship between subsection (g) and subsection (a). *N.J.S.A.* 39:4–50 is not a model of clarity. We find that the reasonableness of each of the results described above supports a conclusion that the statute's meaning is not free from doubt. Accordingly, we must turn to extrinsic sources for assistance.

---

[6] Assuming a blood alcohol level of greater than 0.10%, the first person in the hypothetical, who committed the subsection (g) violation first, would be subject to fines of $1,000 to $1,800 and license suspension of three to fours years, along with other penalties. The second person, who committed the subsection (g) violation second, would be subject to fines of $1,300 to $2,500 and license suspension of four years and seven months to five years, along with other penalties. *N.J.S.A.* 39:4–50(a), –50(g).

*Brannon, supra,* 178 *N.J.* at 507, 842 *A.*2d 148; *Pena, supra,* 178 *N.J.* at 307, 839 *A.*2d 870.

### B.

The Legislature added subsection (g), known as "Filomena's Law," to *N.J.S.A.* 39:4–50 in response to the tragic death of Filomena Coppola, a school crossing guard who was struck by a drunk driver while protecting children from the oncoming vehicle. *Reiner, supra,* 363 *N.J.Super.* at 175, 832 *A.*2d 328. Filomena's Law initially was proposed in two bills, Senate No. 854 (March 5, 1998) and Assembly No. 1821 (March 16, 1998), with identical provisions calling for increased penalties for DWI within 1,000 feet of any school property. Those provisions would have added the following language to subsection (a):

> When a violation of this section occurs while on or within 1,000 feet of any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, the fine, period of community service, term of imprisonment and period of license forfeiture imposed upon the convicted person shall be double that which would otherwise be imposed under paragraphs (1), (2) or (3) of this subsection.
>
> [*N.J. Sen. 854,* 208th Leg. (March 5, 1998).] [7]

By adding the above paragraph to the end of what was then *N.J.S.A.* 39:4–50(a)(3), the proposed bills explicitly provided that DWI in a school zone would not be treated as a separate offense, but would merely double automatically the penalties imposed for DWI. Both the language and structure of the proposed bills evinced an intention to treat DWI in a school zone as grounds for enhanced penalties.

Identical Senate and Assembly Statements accompanying those proposed bills described them as doubling the penalties when the DWI was committed in a school zone:

> The bill would *double* the penalties imposed on a person convicted of driving a motor vehicle under the influence of alcohol or drugs while on or within 1,000 feet of any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board.

---

[7] Paragraph (1) of subsection (a) specified penalties for a first-time DWI offender; paragraph (2) specified penalties for a second-time offender; and paragraph (3) specified penalties for a third-time or subsequent offender.

Under current law, the penalties for a first drunk driving offense include a fine of $250 to $400, possible imprisonment for up to 30 days and loss of a driver's license for six months to one year. Under the bill, the penalties for a first offense of drunk driving while on or within 1,000 feet of a school property would be a fine of $500 to $800, possible imprisonment for up to 60 days and loss of a driver's license for up to two years. The penalties for second, third and subsequent drunk driving offenses committed while on or within 1,000 feet of school property also would be *doubled.* [Senate Law and Public Safety Committee, *Statement to Senate Bill No. 854,* at 1 (Oct. 15, 1998); Assembly Law and Public Safety Committee, *Statement to Assembly Bill No. 1821,* at 1 (June 1, 1998)(emphasis added).]

However, neither of the proposed bills received the Legislature's approval. Instead, the Legislature enacted and the Governor signed into law Senate Substitute for Senate No. 854. *L.* 1999, *c.* 185 (the Substitute). The Substitute expanded the definition of a school zone and included school crossings, whether or not they fall within 1,000 feet of a school. *Id.* at § 4. The change concerning school crossings in particular was consistent with the impetus for the law, namely, the death of Ms. Coppola.

The Statement accompanying the Substitute explained the revision as follows:

This substitute creates stiff new penalties for drunk driving and other serious traffic offenses if committed while: 1) on or within 1,000 feet of school property used for school purposes which is owned by or leased to any elementary or secondary school or school board; 2) driving through a school crossing if the municipality, by ordinance or resolution, has designated the school crossing as such; or 3) driving through a school crossing knowing that juveniles are present if the municipality has not designated the school crossing as such by ordinance or resolution. . . .

Under the substitute, the penalties for a first offense of drunk driving while on or within 1,000 feet of school property or while driving through designated school crossings or school crossings when children are present are a fine of between $500 and $800, a term of imprisonment of 60 days and a period of license suspension of one to two years. For a second offense, the penalties are a fine of $1,000 to $2000 [sic], community service of 60 days, a term of imprisonment of 96 hours to 180 days and license suspension for a period of not less than four years. For a third offense under the substitute, the penalties are a fine of $2,000, imprisonment for 180 days and license suspension of 20 years.

[*Statement to Senate Substitute to Senate Bill No. 854,* at 16 (Aug. 19, 1999)(*Statement to Substitute* ).] 8

---

8 The Appellate Division's decision does not discuss the Statement quoted above. *Reiner, supra,* 363 *N.J.Super.* at 177, 178, 832 *A.2d* 328 (discussing Statements accompanying initially proposed bills that were not adopted).

Notably, the Substitute moved the school zone provisions into a new, separate subsection (g), and revised subsection (a) to begin "[e]xcept as provided in subsection (g)." *L.* 1999, *c.* 185, § 4 (*N.J.S.A.* 39:4-50(g)). The Statement accompanying the Substitute does not address that structural change. *Statement to Substitute.* However, consistent with the changes made to the proposed bills by the Substitute, the Statement accompanying the Substitute describes the substance of the penalties for first, second and subsequent DWI school zone offenses and does not simply state that the ordinary DWI penalties will be doubled. *Ibid.* In addition, we note that the Statement's reference to "the penalties for a first offense of drunk driving while on or within 1,000 feet of school property," suggests a legislative view that subsection (g) was to be an offense in and of itself. *Ibid.*

Those textual and structural changes—adding a separate subsection (g) for school zone offense and redrafting the new subsection to omit the automatic "doubling" language—support the interpretation advanced by the dissent below and by defendant. Further, the Statement accompanying the Substitute more persuasively supports interpreting subsection (g) as creating a separate offense, rather than enhancing the penalties for DWI offenses in general. Whereas the bills as originally proposed would have unambiguously doubled the penalties for any DWI offense occurring in a school zone, irrespective of the number of prior school zone offenses by the defendant, the altered language of Substitute does not support that interpretation.

Finally, we note that a more recent amendment to *N.J.S.A.* 39:4-50 sheds some light on whether subsections (a) and (g) should be treated as separate offenses, or the same offense but with enhanced penalties for school zone offenses. In 2001, the Legislature added to *N.J.S.A.* 39:4-50 a subsection (h), which states: "A court also may order a person *convicted pursuant to subsection a. of this section,* to participate in a supervised visitation program as either a condition of probation or a form of community service, giving preference to those who were under the age of 21 at the

time of the offense." *L.* 2001, *c.* 12, § 1 (*N.J.S.A.* 39:4–50(h)) (emphasis added). The phrasing of subsection (h) suggests that subsections (a) and (g) are separate offenses, and that persons are convicted "pursuant to" one "subsection" or the other, and not the "section," *N.J.S.A.* 39:4–50, generally.

## III.

Examination of the legislative history, and consideration of the possible results attending the differing interpretations to be given to the statute, leads to the conclusion that those extrinsic aids to statutory interpretation do not answer the question whether defendant should be sentenced as a second-time offender under subsection (g). When the text of a statute and extrinsic aids do not enlighten us satisfactorily concerning the Legislature's intent, our obligation is to construe the statute strictly, against the State and in favor of the defendant. *See Livingston, supra,* 172 *N.J.* at 223, 797 *A.*2d 153 (observing that Court's holding was "consonant with the rule of strict construction of penal statutes"); *Valentin, supra,* 105 *N.J.* at 18–23, 23, 519 *A.*2d 322 (analyzing statutory text and legislative history; holding that statute under construction was "sufficiently ambiguous to preclude its application to th[at] defendant in th[at] context without a clarifying amendment").

Under the circumstances presented here, the more favorable result for defendant would be to construe section (g) as a separate offense that requires other subsection (g) convictions for repeat status to attach. We so hold. Our construction allows defendant to be charged with and convicted of violating both subsection (a) and subsection (g) as separate offenses. In respect of the subsection (g) conviction, defendant is a first-time offender. He is a second offender only under subsection (a) because he previously had been convicted of a subsection (a) offense.[9] As explained by the majority below, defendant's conviction under

---

[9] In the event that our decision runs counter to the original intentions of the sponsors of subsection (g), a possibility we readily acknowledge, then a correc-

subsection (a) would merge into his conviction under subsection (g), *Reiner, supra,* 363 *N.J.Super.* at 177, 832 *A.*2d 328 (citing *N.J.S.A.* 2C:1–8a(1), –8a(4)), because the offenses would "differ only in that [subsection (a)] is defined to prohibit a designated kind of conduct generally," *N.J.S.A.* 2C:1–8a(4), *i.e.,* DWI in general, and subsection (g) is designed "to prohibit a specific instance of that conduct," *i.e.,* DWI in a school zone. *Ibid.*

We note the anomalous sentencing that would result if, on remand, the court were limited to sentencing defendant as a first-time offender under subsection (g), which is the offense that survives our traditional merger analysis. Subsection (g) carries lesser penalties for defendant's first-time offender status than those to which defendant would be subjected as a consequence of being a second-time offender under subsection (a) for the same DWI incident. Unlike a first-time-subsection (g) offense, a second-time-subsection (a) offense carries with it mandatory community service and ignition interlock, as well as the potential for a larger fine, more jail time, and a fixed license suspension equal to the longest suspension that may be imposed on a first-time subsection (g) offender. Because we understand the Legislature to have intended to impose increasingly enhanced penalties for repeat DWI offenders, we construe and interpret *N.J.S.A.* 39:4–50 to permit sentencing defendant in accordance with the highest penalties that apply to him. *Cf. State v. Dillihay,* 127 *N.J.* 42, 54–55, 601 *A.*2d 1149 (1992) (merging lesser school zone drug offense with greater non-school zone drug offense, but retaining for sentencing purposes school zone offense's mandatory parole ineligibility period). Thus, the trial court should sentence defendant in accordance with the heightened penalties that apply as a consequence of being a second-time offender under subsection (a). We

---

tive amendment will right the course. However, we must glean the legislative intent from the language of the statute actually enacted, informed by extrinsic sources, some of which support the State's interpretation and some of which do not. In those circumstances, we are constrained to interpret the ambiguous language of the statute against the State and in favor of defendant in respect of the issue of defendant's second-offender status under subsection (g).

believe that that application fulfills the legislative intent with regard to the punishment of repeat DWI offenders.

## IV.

■ Finally, we reject defendant's contention that he did not receive adequate notice that the State would be pursuing school zone charges against him—namely, that his DWI offense occurred within a school zone—substantially for the reasons set forth in the majority opinion of the Appellate Division below. *Reiner, supra,* 363 *N.J.Super.* at 174, 832 *A.*2d 328. As noted by the majority, the police report provided to defendant long before his trial noted that the offense for which defendant was charged occurred within a school zone and, thus, that defendant would be subject to prosecution under subsection (g) and *N.J.S.A.* 39:4–50.4. *Ibid.* Defendant was advised three weeks after his arrest and two weeks before his first court appearance that the State would be pursuing school zone charges. Further, defendant's trial did not begin until nearly one year and four months after he was advised of the school zone charges. Under those circumstances, defendant's contention that he did not have adequate notice of the school zone charges is without merit. *Cf. H.E.S. v. J.C.S.,* 175 *N.J.* 309, 324, 815 *A.*2d 405 (2003) (finding due process violation where defendant received domestic violence complaint against him only one day prior to return date and defendant's request for adjournment was denied).

## V.

For the reasons stated above, we reverse the judgment of the Appellate Division. We remand to the Law Division for resentencing of defendant in accordance with the instructions contained in this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.