BARBARA LUKAS, ALFRED PIERCE, HERBERT GAISS, AUDREY WILLIAMS AND OTHERS SIMILARLY SITUATED, RESPONDENTS, v. STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SERVICES, NEW LISBON STATE SCHOOL, WOODBRIDGE STATE SCHOOL, MARLBORO PSYCHIATRIC HOSPITAL AND GREYSTONE PARK PSYCHIATRIC HOSPITAL, PETITIONERS.

Argued October 7, 1985—Decided March 18, 1986.

*Regina A. Murray,* Deputy Atty. Gen., for appellant (*Irwin I. Kimmelman,* Atty. Gen. of New Jersey, atty.; *Deborah T. Poritz,* Deputy Atty. Gen., of counsel).

*Bennet D. Zurofsky,* for respondents (*Reitman, Parsonnet, Maisel & Duggan,* attorneys; *Bennet D. Zurofsky* and *Sidney Reitman,* on brief).

The opinion of the Court was delivered by

GARIBALDI, J.

At issue is whether teachers in State non-correctional human-services facilities are eligible to acquire tenure under *N.J.S.A.* 18A:7B–11 of the State Facilities Education Act of 1979  The Appellate Division held that they were.  We disagree.

I

Respondents, Barbara Lukas, Alfred Pierce, Herbert Gaiss, and Audrey Williams, were employed in teaching or supervisory positions at New Lisbon School, Woodbridge State School, Marlboro Psychiatric Hospital, and Greystone Psychiatric Hospital, respectively.  The New Jersey Department of Human Services is responsible for operating the educational facilities within these institutions pursuant to the State Facilities Education Act of 1979 (the Act), *N.J.S.A.* 18A:7B–1 to –13.

Respondents were laid off or displaced from their positions. They filed petitions with the Commissioner of Education contending that their respective discharges were in violation of their tenure rights.  The Department of Human Services and the specific institutions filed an answer denying that the teachers were entitled to tenure protection.  Pursuant to *N.J.S.A.* 52:14F–1, the matter was transferred to the Office of Administrative Law.

Respondents filed a motion for partial summary judgment and a notice for class action certification for them to represent all certified teaching staff members employed in institutions

administered according to the terms of the Act. There are twenty-seven State institutions that employ teachers who are subject to the Act. No district or regional boards of education are involved.

The Department of Human Services filed a cross-motion for summary judgment or dismissal. In his Initial Decision, the Administrative Law Judge granted the Department's motion for summary judgment, dismissing the petition. He also denied class action certification.

The Commissioner of Education affirmed the findings and determination of the Administrative Law Judge, and the State Board of Education affirmed the decision of the Commissioner. The Appellate Division, however, reversed the findings that the teachers had no right to achieve tenure and remanded the case for a determination of whether the tenure requirements were in fact met. We granted the State's petition for certification, 101 *N.J.* 222 (1985).

## II

It is well-established that in New Jersey the right to tenure is statutory. A legislative source for tenure rights is essential. *Spiewak v. Rutherford Bd. of Educ.*, 90 *N.J.* 63, 72 (1982); *Zimmerman v. Newark Bd. of Educ.*, 38 *N.J.* 65, 70–72 (1962), *cert.* denied, 371 *U.S.* 956, 83 *S.Ct.* 508, 9 *L.Ed.*2d 502 (1963). As with most teachers in the state, the tenure eligibility of the teachers in *Spiewak* and *Zimmerman* was determined under the Tenure Act, *N.J.S.A.* 18A:28–1 to –15. Because the teachers in this case were not employed by "any school district or under any board of education," the Tenure Act does not apply. Here the teachers claim tenure rights under the State Facilities Education Act, *N.J.S.A.* 18A:7B–11.

To determine whether the respondents are entitled to tenure under the present statutory scheme, an examination of the prior statutory scheme is necessary. In 1972 the Legislature determined "that it is in the best interests of the State of New

Jersey to provide a program of educational advancement to residents of the State's institutions." *L.*1972, *c.* 187. To accomplish that goal, the Legislature enacted *N.J.S.A.* 30:4AA-1 to -8, which established within the Department of Institutions and Agencies a statewide school district known as the Garden State School District (the District).[1]

*N.J.S.A.* 30:4AA-2 provided that:

The district shall be composed of such correctional, charitable, hospital, relief, training and other institutions and noninstitutional agencies within the Department of Institutions and Agencies as the commissioner thereof shall determine. Establishment of the school district provided hereunder shall be in two phases. Phase 1 shall include the correctional institutions in the Department of Institutions and Agencies. Phase 2 shall include the institutions for mental health, State hospitals, charitable institutions and other institutions and agencies within the Department of Institutions and Agencies. Implementation of Phase 2 shall not commence until after the passage of 90 days after the Commissioner of Institutions and Agencies has advised the Commissioner of Education of the Commissioner of Institutions and Agencies['] [sic] intention to begin Phase 2....

Pursuant to *N.J.S.A.* 30:4AA-2, the Commissioner of Institutions and Agencies implemented Phase 1, which included only the correctional institutions in the Department of Institutions and Agencies. Upon 90 days notice to the Commissioner of Education, the Commissioner of Institutions and Agencies had discretion to implement Phase 2, which would have included the noncorrectional institutions. Since he did not exercise that discretion, Phase 2 was never implemented. The District therefore was composed solely of the correctional institutions within the Department of Institutions and Agencies.

At the same time that the new school district was created, the Legislature enacted *N.J.S.A.* 30:4AA-6, which provided that: "In all respects and for all purposes, ... the State school district for institutions shall be considered a local education

---

[1]The Department of Institutions and Agencies was abolished in 1976. The correctional branch of the Department became the present Department of Corrections, and the non-correctional branch became the present Department of Human Services. *L.*1976, *c.* 98; *N.J.S.A.* 30:1A-1 to -3.

authority." There is no dispute that teachers employed in the District were granted tenure rights by *N.J.S.A.* 30:4AA-6.[2] This provision, however, did not grant tenure status to the teachers who were employed in the institutions that were not incorporated into the District, *i.e.*, the non-correctional institutions. For purposes of this appeal, respondents concede that they were employed in the non-correctional institutions.[3]

In 1979 the Legislature enacted the State Facilities Education Act, *L.* 1979, *c.* 207. This Act abolished the Garden State School District, charging the Department of Corrections and the Department of Human Services with the responsibility for operating classes in the correctional *and* non-correctional institutions administered by those departments.

---

[2]An Attorney General's opinion dated September 18, 1980 concluded that this provision conferred tenure status on the teachers employed in the Phase 1 institutions which were within the Garden State School District, reasoning that since the state district was to be treated as a local school district similar to those governed by the Tenure Act, similar tenure eligibility should be provided its employees. This opinion is a justifiable interpretation of the statute even if something of an exception to the historical practice of conferring tenure rights through explicit statutory grant. The opinion also expressed the view that the right to attain tenure for these teachers employed in the Garden State School District was extinguished upon the abolition of that District.

[3]We disagree with our colleague's position that there should be a remand to determine whether the teachers in the non-correctional institutions *somehow* became members of the Garden State School District. Respondents are not claiming that they were employed by the District. For us tenure is not a question of "contract" (as the dissent may imply) but of "statute." *N.J.S.A.* 30:4AA–2 clearly sets forth how Phase 2 was to be implemented. The ALJ in *Ward v. State*, OAL Nos. EDU 182–7/78, EDU 1075/81 (February 16, 1982), affirmed in an unpublished opinion by the Appellate Division, Docket No. A–296–82 TB (decided September 29, 1983), concluded that Phase 2 of the Garden State School District had not been implemented. No one has offered any evidence in this record that the Commissioner of Institutions and Agencies ever formally or informally implemented Phase 2.

We are sympathetic with our colleague's attempt to help these teachers who undertook the difficult task of teaching the most developmentally-disabled children. Nevertheless, the decision is not ours to make. Only the Legislature may confer tenure status.

## III

Section 15 of the Act (*N.J.S.A.* 18A:7B–11) reads in its entirety:

a.   This act shall not affect actions or proceedings, civil or criminal, brought by or against the Garden State School District and pending on the effective date of this act, but such actions may be further prosecuted or defended in the same manner and to the same effect by the Department of Corrections, the Department of Human Services, or the Department of Education, whichever has assumed those duties, powers, and responsibilities which are the subject of the proceedings.

b.   Whenever in any law, rule, regulation, order, contract, document, judicial or administrative proceedings, or otherwise, reference is made to the Garden State School District, the same shall be considered and mean the Department of Corrections, the Department of Human Services, or the Department of Education, which has assumed those duties, powers, and responsibilities which are the subject of the reference.

*All rights and privileges enjoyed by teaching staff members of the Garden State School District shall be enjoyed by teaching staff members employed in State facilities.*   [*L.*1979, *c.* 207, § 15, eff. July 1, 1980 (emphasis added).]

The last paragraph of this section is the focus of this appeal. The teachers urge, and the Appellate Division agreed, that the plain language of this paragraph clearly and unambiguously grants tenure eligibility to all teaching staff members employed in State facilities, regardless of whether they were teaching staff members of the District prior to its abolition. The State argues on the contrary that this paragraph was adopted only to preserve the rights already enjoyed by teaching staff members of the District upon their transfer to State facilities assuming the responsibilities of the District, since those rights otherwise would have been destroyed by the repeal of the District's enabling legislation. The words of the last paragraph of this section, considered in isolation, admit of either interpretation.

This ambiguity renders inapposite any and all emphatic invocations of maxims of statutory construction concerning "plain words" or "clear and unambiguous terms"—such as the teachers' reliance upon the maxim that "[i]f a statute is clear and unambiguous on its face and admits of only one interpretation, [the Court] need delve no deeper than the act's literal terms to derive the Legislature's intent." *State v. Butler*, 89 *N.J.* 220,

226 (1982). The only thing clear about this statute is its ambiguity. To resolve that ambiguity, we need to consider the last paragraph of *N.J.S.A.* 18A:7B–11: first, in light of its legislative history; second, in relation to the language and structure of the entire section; and third, against the background of the entire statutory scheme. On the basis of these considerations, we reverse the judgment of the Appellate Division.

First, the Senate Education Committee Statement, Assembly, No. 86—*L.*1979, *c.* 207, incorporated in *N.J.S.A.* 18A:7B–1, specifically explains the purpose of the amendments concerning the repeal of the District as follows:

> The employees of the Garden State School District are currently litigating the rights they contend they have under the Garden State School District Statute with regard to tenure and salaries. With the repeal of that Statute, the legal basis for their case would be wiped out. The amendments in sections 10 [*N.J. S.A.* 18A:7B–6] and 15 [*N.J.S.A.* 18A:7B–11] would restore that legal basis but would not, in the opinion of the committee, grant them any rights which they do not currently enjoy.

Thus, the Legislature clearly stated that the purpose of the section in dispute was merely to preserve the rights already enjoyed or being litigated by employees of the former District at the time the Act abolished it. There is no evidence that the Legislature intended to create an independent basis or explicit statutory source for the acquisition of tenure rights by those teachers in State facilities who never were employed in the District.

Second, the language and structure of the entire section establish that its point is to preserve certain vestiges of the District, notwithstanding the Act's explicit abolition of this institutional aegis. Within the section, there is a parallelism among its three paragraphs: all three initially refer to the predecessor (the Garden State School District) and subsequently refer explicitly or implicitly to its successor State facilities that have assumed the duties, powers, and responsibilities in question. Had the Legislature intended to provide an independent statutory basis for tenure rights of teaching staff mem-

bers employed in State facilities never included in the District, it most likely would have done so in a separate section explicitly dealing with tenure rights of teaching staff members employed in State facilities.

Third, the context of *N.J.S.A.* 18A:7B–11, against the background of the entire statutory scheme as well as the statutory scheme it abolished, serves to underscore the section's function as a savings clause, which as such should be strictly construed. 2A C. Sands, *Sutherland Stat. Const.* § 47.12 (4th ed. 1984). This further stands as a reminder that the Commissioner of the Department of Institutions and Agencies never exercised the discretion to implement Phase 2 of the Garden State School District, which would have included the non-correctional institutions in the District. Respondents were teachers in non-correctional institutions within the Department of Human Services. Hence, they never were employees of the District. As such, they never enjoyed the tenure rights of employees in correctional institutions included in the District by the implementation of Phase 1. Holding as the Appellate Division did is tantamount to holding that in the very act of abolishing the District (and in a savings clause at that), the Legislature intended to implement Phase 2 of the now-repealed statute. Absent a clear statement of intent to effectuate such a fundamental change (and through such an unlikely means), we will not attribute this intent to the Legislature.

The soundness of our hesitancy to impute to the Legislature the intent that respondents urge upon us is confirmed by three additional considerations: one, respect for our decision in *Spiewak;* two, deference to the Legislature's historical practice of conferring tenure rights through explicit statutory grant; and three, the negative inferences to be drawn from the financial impact of an evidently uncontemplated, inexplicit grant of tenure rights.

Our decision here comports with the spirit of our decision in *Spiewak,* contrary to respondents' assertion. There, we con-

sidered whether the Tenure Act, specifically *N.J.S.A.* 18A:28–5, conferred tenure eligibility on a class of teachers. We held that it did, finding that the Title I teachers were "serving in [a] school district or under [a] board of education," and so came within the express terms of the statute. Therefore, they were presumptively eligible for tenure, unless a statutory exception applied. 90 *N.J.* at 74. Not so respondents in this case. While *Spiewak* does proclaim that "because of its remedial purpose, the Tenure Act should be liberally construed to achieve its beneficent ends," *id.* at 74, the opinion does not extend tenure eligibility where other statutes in issue do not expressly grant tenure rights in the first place.

Hence, *Spiewak* as well as our decision here pays appropriate deference to the Legislature's historical practice of conferring tenure rights through explicit statutory grant. Moreover, as we recognized in *Spiewak*, 90 *N.J.* at 82–83, and *Rutherford Educ. Ass'n v. Board of Educ.*, 99 *N.J.* 8, 28 (1985), the granting of tenure has a serious financial effect on the governmental employer (in those cases, boards of education). Here, the granting of tenure to hundreds of teachers [4] likewise would have a serious financial impact on the current and future budgets of the Department of Human Services and the Department of Corrections. We do not believe that the Legislature intended by such inexplicit language to grant tenure rights, thereby imposing such a financial burden on the public.

## IV

In conclusion, the language, structure, and context of *N.J. S.A.* 18A:7B–11, together with the Senate Education Committee Statement and deference to the Legislature's historical practice of conferring tenure eligibility through explicit statutory grant, establish that the Legislature's intent in enacting the statute

---

[4]At oral argument, respondents' attorney stated that he believed approximately 400 teachers would be affected by this decision.

was merely to preserve the tenure rights of teaching staff members of the Garden State School District. We find it inconceivable that the Legislature, through the statute's ambiguous and inexplicit language, intended to grant tenure eligibility to hundreds of teachers who never were employees of the now-abolished District.

Accordingly, we reverse the judgment of the Appellate Division.

*For reversal*—Chief Justice WILENTZ and Justices HANDLER, GARIBALDI and STEIN—4.

*Concurring in part; dissenting in part*—Justice O'HERN—1.

O'HERN, J., concurring in part and dissenting in part.

Plaintiffs have never been given their day in court on their claims to tenure based upon employment by the Garden State School District. I must dissent from the majority's disposition of those claims without hearing the evidence. The issue is simply not ripe for adjudication by us.

Preliminarily, I note that with respect to the one issue decided by the Appellate Division, I agree with the majority that the State Facilities Education Act, and particularly *N.J.S.A.* 18A:7B–11, does not perforce grant tenure to teaching-staff members employed in state facilities. I agree that its purpose and effect was to preserve the tenure rights of teaching-staff members previously employed by the Garden State School District. Where I disagree with the majority is in its conclusion that it can resolve without hearing or proof the question whether these plaintiffs were employed by the Garden State School District, a status that could confer tenure.

Plaintiffs' complaint alleges that each was employed in an institution that was "part of the Garden State School District." The State moved to dismiss the petition or, in the alternative, for summary judgment, based on the grounds that *"res judicata* and collateral estoppel bar relitigation of the ultimate issues

in this matter." The State relied upon an unpublished companion decision in *Ward v. State of New Jersey*, Appellate Division Docket No. A–296–82T3 (decided September 29, 1983), holding that teachers employed in educational programs by the Department of Human Services were not entitled to tenure eligibility. The State asserted that since an employee representative participated in that case and the matter had been resolved adversely to the teachers involved, these similarly-situated plaintiffs were barred by the decision.

The Administrative Law Judge accepted this position and granted the State's motion. Hence we must look to the *Ward* record to determine whether correct principles of law were employed in resolving the teachers' claims.

In the *Ward* case, the Administrative Law Judge's findings recognized that, at least insofar as their positions were federally funded, the teachers were employees of the Garden State School District. He found:

> The Garden State School District interviewed, hired, supervised and dismissed teachers for the Department of Corrections, determined the certificates required for teachers, conducted teacher workshops, approved calendars, and required reports of educational programs carried in the ten correctional institutions. *Only in respect to Title I programs did the Garden State School District become similarly involved with educational programs in the Department of Human Services.*
>
> [*Ward v. State of New Jersey*, OAL Nos. EDU 182–7/78, EDU 1075–81 (Feb. 16, 1982), slip op. at 7, *aff'd*, App. Div. A–296–82T3 (1983) (emphasis supplied).]

However, he relied upon discredited principle when he concluded:

> It is well settled that not all teaching staff members employed by public school districts can attain tenure, although they may perform teaching duties and be holders of certificates issued by the State Board of Examiners. *Capella v. Bd. of Ed. of Camden County Voc. Tech. Sch.*, 145 *N.J.Super.* 209 (App.Div. 1976); *Point Pleasant Beach Teachers Ass'n v. Callam*, 173 *N.J.Super.* 11 (App.Div.1980); *Biancardi v. Waldwick*, 139 *N.J.Super.* 175 (App.Div.1976), aff'd 73 *N.J.* 37 (1977).
>
> [*Ward, supra,* OAL, slip op. at 10.]

These precedents were specifically overruled or limited by our decision in *Spiewak v. Rutherford Bd. of Educ.*, 90 *N.J.* 63

(1982), where we explained that once teaching staff members are employed by a public school district, the source or manner of funding is irrelevant to their legal status. *Id.* at 82. The language of *Spiewak* is unflinching on this point. The Court notes that "[b]y focusing on the contractual relations between the parties and not the statutory criteria for tenure, the court in *Point Pleasant* overlooked the authority which holds that tenure is a legal right governed by statute rather than contract." *Spiewak, supra,* 90 *N.J.* at 76.

I am not impressed by the final point the Administrative Law Judge made in *Ward* that there is no evidence that the Commissioner of Institutions and Agencies ever formally adopted the second phase of the development of the Garden State School District. *Ward, supra,* OAL, slip op. at 11. The reader will search in vain the two opinions of the Attorney General dealing with tenure rights of teaching-staff members of the Garden State School District for any reference to this concept of phasing-in the employees. *Comparable Tenure Benefits Under N.J.S.A. 30:4AA–1 et seq.,* Op. N.J. Att'y Gen. Sept. 11, 1975; *Tenure Status of Certificated Teachers, Supervisors or Instructors Assigned to the Garden State School District,* Op.N.J.Att'y Gen. Sept. 18, 1980. In his latter opinion, the Attorney General recapitulated the status of the law:

> In summary, employees of the [Garden] State school district were eligible to attain tenure when the district was within the Department of Institutions and Agencies in conformity with the requirements of N.J.S.A. 18:28–5. Similarly, employees were tenure eligible when the district was transferred to the Department of Education pursuant to the conditions set forth in N.J.S.A. 18A:60–1. Additionally, tenure could only be attained by those employed in educational programs equivalent to those required in local school districts. Finally, section 14 of the State Facilities Education Act preserves the status of those who had attained tenure prior to the abolition of the State school district, but does not provide an independent basis for certificated employees of the Office of Education in the Department of Human Services and Corrections to acquire tenure in the future. These employees should be afforded the employment protections generally available to State employees.
>
> [Op.N.J.Att'y Gen., Sept. 18, 1980, at 7–8.]

Hence the question is simply this: whether the plaintiffs were employees of "the State School District." As to that, we

know from the ALJ's findings in *Ward* that at least insofar as their positions were federally funded, they were employees of the District because of his finding that the District "hired, supervised and dismissed teachers * * * in respect to Title I programs * * *." *Ward, supra,* OAL, slip op. at 7. It is of no moment whether the Commissioner thought that the teachers were not tenure-eligible because Phase 2 had not been formally implemented. If *Spiewak v. Rutherford Bd. of Educ., supra,* 90 *N.J.* 63, teaches us anything, it is that tenure is a matter of status and not of contract. Hence the subjective mental attitude of the Commissioner is immaterial.

If the State used the Garden State School District as the employer to federally fund educational programs, it implemented Phase 2 in fact, if not in name. It cannot have it both ways. "[G]overnment must 'turn square corners.'" *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 426 (1985) (quoting *Gruber v. Mayor of Raritan Tp.,* 73 *N.J.Super.* 120 (App.Div.), *aff'd,* 39 *N.J.* 1 (1962)). I realize that perhaps only a few teachers in our State institutions for the developmentally-disabled will be able to meet the stringent requirements for tenure eligibility under *N.J.S.A.* 18A:60–1 to –15. For they must prove not only that they met the required years of uninterrupted service, but also that they were employed under a teaching certificate and should survive in many cases, as here, a reduction in force. Having given themselves to the difficult task of educating the most developmentally disabled of our children, and to the needs of students whose only chance for a thorough and efficient education will come within State institutions, these teachers are entitled to have the allegations of their complaint tested on a developed record rather than have them disposed of by resolution of one point raised in an appeal.

In his Petition, the Attorney General emphasized that his gravest concern with the decision below was that "[i]n holding that *N.J.S.A.* 18A:7B–11 [the State Facilities Education Act] bestows tenure benefits upon Department of Human Services

teachers, the *Lukas* court has radically departed from the statute and has substituted its will for that of the Legislature." We have decided that issue in favor of the Attorney General. That does not, however, resolve the other difficult issues raised by these teachers. In a brief filed below, the teachers reserved these rights:

> The petitioners have several legal theories that they believe entitle them to tenure. It must be frankly admitted, however, that facts pertaining to all but one of these theories are in dispute. The present motion therefore is devoted to the one theory to which there is no relevant factual dispute, namely, that the petitioners are entitled to tenure by virtue of Section 15 of the State Facilities Education Act of 1979, N.J.S.A. 18A:7B–11(b).

It may turn out that pursuit of the teachers' other theories may not be successful. Still, they are entitled to their day in court. I would remand their cases and those of other teachers similarly situated for a factual hearing on the question whether they were in fact interviewed, hired, supervised, and dismissed by the Garden State School District. If they were, they are entitled to claim tenure-eligibility on the principles of *Spiewak v. Rutherford Bd. of Educ., supra,* 90 *N.J.* 63.