875 A.2d 978 (2005)
378 N.J. Super. 277
In the Matter of MILITARY SERVICE CREDIT FOR STATE TEACHERS, Department of Corrections, Department of Human Services and Juvenile Justice Commission.
Superior Court of New Jersey, Appellate Division.
Argued telephonically May 10, 2005.
Decided June 14, 2005.
*979 Rosemarie Cipparulo argued the cause for appellant (Weissman & Mintz, LLC, attorneys; Ms. Cipparulo, on the brief).
Todd A. Wigder, Deputy Attorney General, argued the cause for respondents Merit System Board and Department of Personnel (Peter C. Harvey, Attorney General of New Jersey, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Mr. Wigder, on the brief).
Before Judges PETRELLA,[1] LINTNER and YANNOTTI.
*980 The opinion of the court was delivered by
YANNOTTI, J.A.D.
The Communication Workers of America AFL-CIO (CWA) appeals from a final determination of the Merit System Board (Board) in which the Board concluded that teachers employed by departments and agencies of the State government are not entitled to military service credits for compensation purposes pursuant to N.J.S.A. 18A:29-11. We affirm.
This dispute arose in November 2000 when certain persons employed by the Department of Corrections (DOC) at the South Woods State Prison requested that they be provided with military service credits pursuant to N.J.S.A. 18A:29-11 for purposes of determining their compensation. The DOC concluded that the teachers were entitled to the credits but advised that the manner in which the statute would be implemented would have to be determined by the Department of Personnel (DOP) and the Department of Treasury. The employees thereupon brought the matter to the attention of the CWA and in June 2001, CWA's counsel wrote to the Commissioner of Personnel requesting that State agencies employing teachers be instructed to provide military service credits pursuant to the statute. In August 2003, the DOP advised the CWA that N.J.S.A. 18A:29-11 did not apply to teachers employed by the State government. The CWA filed a timely appeal with the Board and on March 2, 2004 the Board issued its final determination. This appeal followed.
In addressing the CWA's contention that N.J.S.A. 18A:29-11 applies to teachers in State institutions and agencies, we begin with the well established principle that the courts have "only a limited role to play in reviewing the actions of other branches of government." Matter of Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996). We may intervene only in those "rare circumstances in which an agency['s] action is clearly inconsistent with its statutory mission or other state policy." Ibid. Our role is to determine whether the agency's determination is arbitrary, capricious or otherwise contrary to law. George Harms Constr. v. Turnpike Authority, 137 N.J. 8, 27, 644 A.2d 76 (1994). On questions of statutory interpretation, we will defer to the interpretation given to a statute by the agency charged with its enforcement, recognizing that the judiciary remains the final authority on statutory construction. Koch v. Director, Div. of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999)(citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978)).
The primary goal in any matter requiring interpretation of a statute is to discern and implement legislative intent. State v. Reiner, 180 N.J. 307, 311, 850 A.2d 1252 (2004). The first step in our analysis is to consider the statutory language because the clearest indication of a statute's meaning is its plain language. Cty. of Camden v. South Jersey Port Corp., 312 N.J.Super. 387, 396, 711 A.2d 978 (App. Div.), certif. denied, 157 N.J. 542, 724 A.2d 801 (1998)(citing National Waste Recycling, Inc. v. Middlesex Cty. Improvement Auth., 150 N.J. 209, 223, 695 A.2d 1381 (1997)). "If the meaning of the text is clear and unambiguous on its face, we enforce that meaning." Reiner, supra, 180 N.J. at 311, 850 A.2d 1252.
We turn then to N.J.S.A. 18A:29-11, which provides as follows:

*981 Every member who, after July 1, 1940, has served or hereafter shall serve, in the active military or naval service of the United States or of this state, including active service in the women's army corps, the women's reserve of the naval reserve, or any similar organization authorized by the United States to serve with the army or navy, in time of war or emergency, or for or during any period of training, or pursuant to or in connection with the operation of any system of selective service, shall be entitled to receive equivalent years of employment credit for such service as if he had been employed for the same period of time in some publicly owned and operated college, school or institution of learning in this or any other state or territory of the United States, except that the period of such service shall not be credited toward more than four employment or adjustment increments.
Nothing contained in this section shall be construed to reduce the number of employment or adjustment increments to which any member may be entitled under the terms of any law, or regulation, or action of any employing board or officer, of this state, relating to leaves of absence.
[N.J.S.A. 18A:29-11].
The term "teaching staff member" is defined in N.J.S.A. 18A:1-1 to mean:
a member of the professional staff of any district or regional board of education, or any board of education of a county vocational school, holding office, position or employment of such character that the qualifications, for such office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to the office, position or employment, issued by the state board of examiners and includes a school nurse.
[N.J.S.A. 18A:1-1].
In our view, the plain language of the statute is clear and unambiguous. It expressly provides that "members" are entitled to the military service credit. The definition of "teaching staff member" in N.J.S.A. 18A:1-1 reveals that the only "members" who qualify for military service credit are teachers employed in local school districts, regional boards of education or county vocational schools. Teachers who are employed by the State in its departments and agencies are not "teaching staff members" as defined in N.J.S.A. 18A:1-1. Therefore, State teachers are not entitled to the military service credits under N.J.S.A. 18A:29-11.
That the military service credit in N.J.S.A. 18A:29-11 only applies to teachers in local and regional schools is further made clear by reference to the other statutes which govern the compensation of "teaching staff members." Statutes relating to the same subject matter are to be construed as one in order to ascertain legislative intent. Cty. of Camden, supra, 312 N.J.Super. at 398, 711 A.2d 978 (citing State v. Green, 62 N.J. 547, 554-55, 303 A.2d 312 (1973)). "Legislative intent is to be gleaned from the entire statute, to be read so that each provision aligns with the intent of the entire act." Boardwalk Regency Corp. v. New Jersey Casino Control Comm'n, 352 N.J.Super. 285, 300, 800 A.2d 157 (App.Div.), certif. denied, 174 N.J. 366, 807 A.2d 197 (2002).
N.J.S.A. 18A:29-11 is codified with other statutes that govern the compensation that is to be paid to "teaching staff members." N.J.S.A. 18A:29-1 to -16. These statutes provide, among other things, for the adoption by the boards of education of salary policies and schedules for teaching staff members, N.J.S.A. 18A:29-4.1; the payment of a minimum salary to full-time *982 teachers, N.J.S.A. 18A:29-5; and the increase or withholding of salary increases by any board of education, N.J.S.A. 18A:29-13, N.J.S.A. 18A:29-14. This comprehensive scheme for the payment of salaries to "teaching staff members" does not apply to teachers employed by the State, whose salaries are paid pursuant to the statutes governing the compensation of employees of the State government. N.J.S.A. 11A:3-7 and N.J.S.A. 52:14-15.27. Consequently, the statute providing military service credit, which is an integral part of this comprehensive statutory scheme governing compensation of teachers employed by local school districts, regional boards of education and county vocational schools, does not apply to teachers employed by the State.
The history of N.J.S.A. 18A:29-11 provides additional support for our view that this law does not apply to teachers employed by the State. The statute was first enacted in 1954, as L. 1954, c. 249, § 6. It provided as follows:
Every teacher who, after July 1, 1940, has served or hereafter shall serve, in the active military or naval service of the United States or of this State, including active service in the Women's Army Corps, the Women's Reserve of the Naval Reserve, or any similar organization authorized by the United States to serve with the Army or Navy, in time of war or an emergency, or for or during any period of training, or pursuant to or in connection with the operation of any system of selective service, shall be entitled to any employment or adjustment increment to which he would have been entitled if he had been employed for the same period of time in some publicly owned or operated college, school or institution of learning in this or any other State or territory of the United States, except that the period of such service shall not be credited toward more than 4 employment or adjustment increments. Nothing in this section shall be construed to reduce the number of employment or adjustment increments to which any teacher may be entitled under the terms of any law, or regulation, or action of any employing board or officer, of this State, relating to leaves of absence.
[Emphasis added.].
The 1954 Act further established a salary schedule for "teachers" in New Jersey, based upon their years of employment. L. 1954, c. 249, § 2. The Act defined "teacher" to include:
any full-time member of the professional staff of any district or regional board of education or any board of education of a county vocational school, the qualifications for whose office, position, or employment are such as to require him to hold an appropriate certificate issued by the State Board of Examiners in full force and effect in this State and who holds a valid permanent, limited or provisional certificate appropriate to his office, position, or employment.
[L. 1954, c. 249, § 1].
The statute was carried forward with minor change as part of the general revision of the education laws that was enacted in 1967, L. 1967, c. 271. The word "teacher" was changed to "member" and the term "teaching staff member" was defined in N.J.S.A. 18A:1-1. The language of the statute as initially enacted in 1954, and as re-enacted in 1967, confirms that the Legislature intended to provide military service credit for the purpose of determining the compensation for teachers employed by local school districts, regional boards of education and county vocational schools.
The CWA argues, however, that legislation enacted after 1967 extended the military service credit in N.J.S.A. 18A:29-11 to State-employed teachers. In 1972, the *983 Legislature established a state-wide school district known as the Garden State School District within the Department of Institutions and Agencies. L. 1972, c. 187, codified as N.J.S.A. 30:4AAA-1 to -8. The Legislature determined that it was in the State's best interest to provide a program of education for the advancement of residents of the State's institutions. N.J.S.A. 30:4AAA-1. N.J.S.A. 30:4AAA-2 stated that the district would be implemented in two phases. Phase 1 included correctional institutions and Phase 2 included institutions for mental health, State hospitals and other agencies within the Department. Ibid. In addition, N.J.S.A. 30:4AAA-6 provided, "In all respects and for all purposes, including State aid and funding and assistance by the Federal Government, except as otherwise specifically provided by law, the State School district for institutions shall be considered a local education authority." (Emphasis added).
The CWA argues that, because the Garden State School District was to be considered "a local education authority," teachers employed by the district thereby became entitled to military service credit under N.J.S.A. 18A:29-11. The CWA further argues that, even though the Garden State School District was abolished in 1979, the teachers presently employed by the State remain eligible for military service credits under N.J.S.A. 18A:29-11. We do not agree.
The Garden State School district was to be considered a "local education authority" except as "otherwise specifically provided by law." N.J.S.A. 30:4AAA-6. The relevant statutes make clear that the district was not to be considered a "local education authority" for purposes of determining the manner in which its employees were to be paid because a different compensation scheme was "provided by law." In N.J.S.A. 30:4AAA-4(e), the superintendent of the district was authorized to hire such professional and non-professional personnel needed to operate the district. The statute further stated, "Salary schedules shall be comparable to those of the Department of Education and the Marie H. Katzenbach School for the Deaf." Ibid.
Employees in the Department of Education and the Katzenbach School are State employees. N.J.S.A. 18A:4-38; N.J.S.A. 18A:6-2(b). They are not paid pursuant to schedules and mandates imposed upon local school districts, including N.J.S.A. 18A:29-11, but instead are paid pursuant to the compensation plan for State workers under a separate statutory scheme. N.J.S.A. 11A:3-7 and N.J.S.A. 52:14-15.27. Therefore, teachers who were employed by the Garden State School District during its brief existence from 1972 to 1979 were never entitled to military service credit under N.J.S.A. 18A:29-11.
The legislation abolishing the Garden State School District also provides no support for CWA's contention that the military service credits in N.J.S.A. 18A:29-11 were extended to State teachers. The district was abolished by the State Facilities Education Act of 1979. L. 1979, c. 207, § 21. This legislation established offices of education within the Department of Correction, L. 1979, c. 207, § 12, codified as N.J.S.A. 18A:7B-8, and in the Department of Human Services, L. 1979, c. 207, § 13, codified as N.J.S.A. 18A:7B-9. The Act also provided that "[s]alary schedules for teaching staff members and administrators [employed in State facilities] shall be comparable to similar positions in the Department of Education and the Marie H. Katzenbach School for the Deaf." L. 1979, c. 207, § 10, codified as N.J.S.A. 18A:7B-6. This provision of the State Facilities Education Act, which essentially tracked the language of N.J.S.A. 30:4AAA-4(e), confirmed that teachers *984 who were employed by the State after the abolition of the State district would be paid as State employees, not as employees of local school districts, regional boards of education and county vocational schools.
The Legislature additionally mandated that the State Facilities Education Act should not be construed to deprive employees of the Garden State School District "of any rights or protections provided by Civil Service, pension, or retirement laws of this State." Ibid. The Act also stated that, "All rights and privileges enjoyed by teaching staff members of the Garden State School District shall be enjoyed by teaching staff members employed in State facilities." L. 1979, c. 207, § 15, codified as N.J.S.A. 18A:7B-11. However, because the military service credit in N.J.S.A. 18A:29-11 was a part of the statutory scheme for the compensation of "teaching staff members" in local and regional school districts, and because that compensation scheme did not apply to State-employed teachers, teachers in the State school district were never entitled to credit for military service under N.J.S.A. 18A:29-11. Therefore, military service credit under the statute was not a "right or privilege" enjoyed by employees of the State school district and employees who were working in the district in 1979 when it was abolished did not retain any "right or privilege" to military service credits.
The Supreme Court's decision in Lukas v. State of New Jersey, 103 N.J. 126, 510 A.2d 1123 (1986), supports our conclusion. In that case, the Court considered whether teachers who were then employed by the Department of Human Service were eligible to acquire tenure pursuant to N.J.S.A. 18A:7B-11. The Court noted that when the Garden State School District was established, it was implemented only for the corrections institutions in the Department of Institutions and Agencies. Id. at 129, 510 A.2d 1123. The Court stated that there was no dispute that teachers employed by the district were entitled to tenure pursuant to N.J.S.A. 30:4AA-6. However, the Court rejected the assertion that staff members teaching in State facilities were entitled to tenure protection, regardless of whether they were employed by the district prior to its abolition. The Court held that N.J.S.A. 18A:7B-11 was only intended to preserve the rights already enjoyed by employees of the Garden State School District, not to create an "independent basis or explicit statutory source for the acquisition of tenure rights by those teachers in State facilities who never were employed in the District." Id. at 132, 510 A.2d 1123.
The Lukas opinion therefore makes clear that N.J.S.A. 18A:7B-11 was not intended to provide an independent statutory source of "rights" for persons who were never employed by the Garden State School District. Rather, the statute was intended to preserve certain "rights and privileges" of teachers who were employed in the district at the time it was abolished in 1979. Furthermore, as we have explained, although teachers employed in the Garden State School District were eligible for tenure pursuant to N.J.S.A. 30:4AA-6, teachers in the State district were not entitled to compensation according to the schedules and mandates applicable to local districts, including the military service credits in N.J.S.A. 18A:29-11, because State-employed teachers were subject to a separate and distinct compensation plan. Thus, any teachers who were employed in the State district in 1979 and remain in the State's workforce today, would not be entitled to military service credits under N.J.S.A. 18A:29-11 because they never had a right to such benefits when employed by the district.
*985 The CWA additionally argues that its demand for military service credits is supported by the opinion of the Commissioner of Education in Sparacio v. New Jersey Department of Corrections, 95 N.J.A.R.2d (EDU) 364 (1995). There, the Commissioner determined that teachers employed in the DOC are entitled to military service credit under N.J.S.A. 18A:28-11.1 for "seniority purposes." The statute generally provides that, "in computing length of service for seniority purposes," every "teaching staff member" who served in the armed forces after July 1, 1940, will be entitled to "receive equivalent years of employment or seniority credit for that service ..." Ibid. The Commissioner determined that the statute applies to all teachers "covered by any tenure provisions within Title 18A."
In our view, the Commissioner's Sparacio decision does not support the CWA's assertions in this case. The Board commented on the Sparacio decision:
The Commissioner of Education reviewed the legislative history of N.J.S.A. 18A:28-11.1 and determined that the Legislature did not intend to limit it to local teachers, but rather to apply the requirement to all teaching staff members covered by any tenure provision of Title 18A. Id. at 366. This conclusion was reached by analysis of L.1985, c. 217, the statute which established the military service seniority credit. This legislation consisted of two sections. The Commissioner noted that the first section, concerning the military service credit, was not placed by the Legislature within chapter 28 of Title 18A, which deals with tenure rights of local teachers. [footnote omitted]. In contrast, the second section, dealing with the reemployment rights of laid off tenured teachers, specifically amended N.J.S.A. 18A:28-12. The Commissioner of Education found that this differential legislative treatment of the two sections demonstrated the intent to apply section 2 only to local teachers and section 1 to all teachers. Ibid.

The Board did not address the correctness of the Commissioner's decision. We also decline to say whether we agree or disagree with the Commissioner's interpretation of N.J.S.A. 18A:28-11.1. However, we note that the Legislature has drawn a clear distinction between tenure and compensation of teachers. Following the Lukas decision, legislation was enacted which provided that all teachers, including teachers employed in State agencies, are entitled to tenure protection. N.J.S.A. 18A:60-1.2. But the Legislature has treated the issue of compensation differently, requiring that State-employed teachers be paid pursuant to the State's compensation plan, and requiring that teachers employed by local and regional school districts be compensated pursuant to the compensation requirements in N.J.S.A. 18A:29-1 to -16. Military service credits for tenure protection therefore stand on a different footing than military service credits for compensation purposes. The former may apply to all teachers, as the Commissioner of Education has opined. The latter clearly applies only to teaching staff members employed by local school districts, regional boards of education and county vocational schools.
We are also unconvinced by the CWA's assertion that although State teachers are subject to the State compensation plan, the DOP is not precluded from applying military service credit to teachers employed by the State. We agree that the State compensation plan does not expressly foreclose recognition of such credits were they otherwise mandated by law. However, N.J.S.A. 18A:29-11 does not require *986 that State teachers be accorded this benefit.
We are likewise unpersuaded by CWA's assertion that it is "inequitable" to deny the military service credits to State teachers when such credits are made available to other teachers throughout the State. As CWA conceded at oral argument on the appeal, such credits are not available to any other employee in the State's workforce. In our view, it is not "inequitable" to treat all employees of the State government similarly. The manner in which State workers are to be compensated is a matter committed to the discretion of the Legislature and appropriate State officials. We are not at liberty to extend the statute to teachers otherwise not entitled to the military credits based on our view of what is or is not "equitable."
Affirmed.
NOTES
[1] Judge Petrella did not participate in oral argument. However, the parties consented to his participation in the decision.