18 A.3d 1072 (2011)
420 N.J. Super. 105
Valeria HEADEN, Plaintiff-Appellant,
v.
JERSEY CITY BOARD OF EDUCATION, Defendant-Respondent.
A-5947-09T1.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 2011.
Decided May 12, 2011.
*1074 Mark Pfeffer, Atlantic City, argued the cause for appellant (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr. Pfeffer, on the brief; Jeffrey D. Light, Northfield, of counsel and on the brief).
Robert E. Levy argued the cause for respondent (Scarinci & Hollenbeck, LLC, attorneys; Mr. Levy, of counsel and on the brief; Kathleen J. Devlin, Lyndhurst, on the brief).
Before Judges AXELRAD, LIHOTZ and J.N. Harris.[*]
The opinion of the court was delivered by
LIHOTZ, J.A.D.
We are asked to determine whether school districts that have adopted the New Jersey Civil Service Act, N.J.S.A. 11A:1-1 to: 12-6 (the Act or Civil Service Act), are required to extend vacation leave to the district's ten-month food service employees pursuant to N.J.S.A. 11A:6-3, and an implementing regulation, N.J.A.C. 4A:6-1.1(e). We consider the question in light of the circumscribed provisions governing educational employees set forth in Title 18A.
Plaintiff Valeria Headen, as the class representative, appeals from the Law Division's July 9, 2010 order. The court denied plaintiff's motion for partial summary judgment and granted the cross-motion of defendant Jersey City Board of Education, resulting in the dismissal of the class action complaint seeking an award for past, current and future vacation leave. Plaintiff argues the court erred as a matter of law. We disagree and affirm.

I.
The applicable facts are not disputed. Plaintiff is employed by defendant as a food service worker. She started in this position on February 17, 2006, working a full school day, ten months per year. The Jersey City school district is one of the State's poorer urban districts, first identified in Abbott v. Burke, 100 N.J. 269, 278, 495 A.2d 376 (1985) (Abbott I). The State Board of Education "initiated a full take-over" of the Jersey City school district, "appointing a state district superintendent to supplant the local district board of education and direct all operations of the district[,]" pursuant to N.J.S.A. 18A:7A-15. Abbott v. Burke, 119 N.J. 287, 352, 575 A.2d 359 (1990) (Abbott II).
Plaintiff is a member of two bargaining units. She is represented by the Paraprofessionals Association, an affiliate of the Jersey City Education Association, and Local 2262 of the American Federation of State, County, and Municipal Employees, AFL-CIO, which together represent her and others similarly situated when reaching collectively negotiated agreements (CNA) governing the terms and conditions of employment of defendant's personnel. In the past, the respective CNA provided plaintiff with paid time off including a one-week *1075 winter break, a one-week spring break, two days for the annual teachers' convention, approximately fifteen holidays and requested personal days. During the 2008-2009 school year plaintiff's total leave time, comprised of the above periods, totaled twenty-eight days.
Plaintiff's putative class action complaint sought current and future vacation leave during the school year, pursuant to N.J.S.A. 11A:6-3 of the Act, and an award of compensation for vacation time not previously allowed. A different Law Division judge certified the class, which was defined as "all full-time ten-month employees of the [defendant] in the career service (excluding employees in the unclassified service)."
Plaintiff moved for partial summary judgment seeking a determination of whether the class members were entitled to vacation leave pursuant to N.J.S.A. 11A:6-3 and N.J.A.C. 4A:6-1.2(b). Plaintiff argued she fell within the parameters of the statute, which governs vacation leave for "full-time political sub-division" civil servant employees. N.J.S.A. 11A:6-3. Defendant opposed the motion and filed a cross-motion seeking summary judgment, arguing N.J.S.A. 11A:6-3 does not apply to ten-month school district employees, rather the terms of plaintiff's employment were governed by Title 18A.
Following oral argument, Judge Alvaro Iglesias entered an order on July 9, 2010, supported by a written memorandum, denying plaintiff's motion and granting defendant's. A subsequent order dated July 19, 2010, dismissed plaintiff's complaint as no further outstanding issues requiring disposition were presented. This appeal ensued.

II.
We recite the legal principles that guide our review. Further, we set forth those statutory provisions at issue on appeal.

A.
No deference is given to a trial court's legal conclusions, as we review such conclusions de novo. City of Atl. City v. Trupos, 201 N.J. 447, 463, 992 A.2d 762 (2010); Estate of Hanges v. Metropolitan Property & Cas. Ins. Co., 202 N.J. 369, 382, 997 A.2d 954 (2010). In our review of the grant or denial of summary judgment, we use the same standard as the trial court. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). The "essence of the inquiry" is "`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)).

B.
Our determination of the issues presented in this appeal centers on statutory review. "The primary goal in any matter requiring interpretation of a statute is to discern and implement legislative intent." In re Military Serv. Credit For State Teachers, 378 N.J.Super. 277, 281, 875 A.2d 978 (App.Div.2005) (citing State v. Reiner, 180 N.J. 307, 311, 850 A.2d 1252 (2004)).
We begin our analysis by considering "the statutory language because the clearest indication of a statute's meaning is its plain language." Ibid. "Legislative intent is to be gleaned from the entire statute,. . . read so that each provision aligns with the intent of the entire act." Boardwalk Regency Corp. v. N.J. Casino Control Comm'n, 352 N.J.Super. 285, 300, 800 A.2d 157 (App.Div.), certif. denied, 174 N.J. 366, *1076 807 A.2d 197 (2002). "If the meaning of the text is clear and unambiguous on its face, we enforce that meaning." Reiner, supra, 180 N.J. at 311, 850 A.2d 1252. If some ambiguity exists, we are obligated to view the statute as a whole and consider all of its related sections. Warren Cnty. Bar Ass'n v. Bd. of Chosen Freeholders of Cnty. of Warren, 386 N.J.Super. 194, 201-02, 899 A.2d 1028 (App.Div.), certif. denied, 188 N.J. 354, 907 A.2d 1014 (2006).
In our review, we do not imply the existence of an absent term where the Legislature has used a specific term in one place but excluded that same language in another. GE Solid State, Inc. v. Dir., Div. of Tax., 132 N.J. 298, 308, 625 A.2d 468 (1993). We also consider other statutes discussing the same subject matter to give effect to "each constituent part of an overall legislative scheme." State v. Hodde, 181 N.J. 375, 379, 858 A.2d 1126 (2004). "When considering statutory provisions that relate to the same or similar subject matter, we make every effort to reconcile those laws that appear to be in conflict and attempt to interpret them harmoniously." Oches v. Twp. of Middletown Police Dep't, 155 N.J. 1, 5, 713 A.2d 993 (1998).
Additionally, in construing regulations promulgated under a statute, we follow these same rules of statutory construction. Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J.Super. 1, 5, 526 A.2d 1087 (App.Div.), certif. denied, 102 N.J. 385, 508 A.2d 247 (1985).

C.
The statute relied upon by plaintiff to support her argument, N.J.S.A. 11A:6-3, is a provision of the Civil Service Act. Overall, the Act's goal "is to secure the appointment and advancement of civil service employees based on their merit and abilities[,]" and to effectuate "the purpose of the Act, which is to ensure efficient public service for state, county, and municipal government." Commc's Workers v. N.J. Dep't of Pers., 154 N.J. 121, 126, 711 A.2d 890 (1998).
To determine whether the Legislature intended to include employees in the plaintiff-class within the scope of the vacation leave provisions of the Act, we examine the statute relied upon by plaintiff, as well as the surrounding sections that also discuss employee leave.
Chapter 6 of the Act addresses employee leave, supplemental compensation, work hours and employee development. N.J.S.A. 11A:6-3 falls between other provisions governing the compensation of employees of the State government. In these sections discussing employee leave, there are no specific statutory references directed to vacation leave for ten-month employees.
Starting with N.J.S.A. 11A:6-1, the Legislature has directed:
The Civil Service Commission shall designate the types of leaves and adopt rules for State employees in the career and senior executive services regarding procedures for sick leave, vacation leave and other designated leaves with or without pay as the Civil Service Commission may designate. Any political subdivision subject to the provisions of this title shall prepare procedures regarding these items.
[N.J.S.A. 11A:6-1.]
Vacation leave for full-time State employees is discussed in N.J.S.A. 11A:6-2. The specific provision under review, N.J.S.A. 11A:6-3, is directed to full-time political subdivision employees. It provides:
Vacation leave for full-time political subdivision employees shall be at least:
a. Up to one year of service, one working day for each month of service;

*1077 b. After one year and up to 10 years of continuous service, 12 working days;
c. After 10 years and up to 20 years of continuous service, 15 working days;
d. After 20 years of continuous service, 20 working days; and
e. Vacation not taken in a given year because of business demands shall accumulate and be granted during the next succeeding year only; except that vacation leave not taken in a given year because of duties directly related to a state of emergency declared by the Governor may accumulate at the discretion of the appointing authority until, pursuant to a plan established by the employee's appointing authority and approved by the commission, the leave is used or the employee is compensated for that leave, which shall not be subject to collective negotiation or collective bargaining.
[Ibid.]
Part-time employees are afforded "proportionate vacation, sick and administrative leave." N.J.S.A. 11A:6-7.
Ten-month employees are mentioned in the regulation promulgated by the agency to govern vacation leave of full-time employees, which provides in pertinent part:
(a) Full-time State employees in the career service shall be entitled to annual paid vacation leave, credited at the beginning of each calendar year in anticipation of continued employment, based on their years of continuous State full-time or part-time service in the career, senior executive or unclassified service.
. . . .
(b) From initial employment up to the end of the first calendar year, annual paid vacation leave for full-time local employees shall be at least the amounts specified in (a)1 and (a)2 above. Thereafter their vacation leave shall be at least:
1. From the beginning of the first full calendar year of employment and up to 10 years of continuous service, 12 working days;
2. After 10 years of service and up to 20 years of continuous service, 15 working days; and
3. After 20 years of continuous service, 20 working days.
. . . .
(e) Part-time and 10-month employees shall be entitled to a proportionate amount of paid vacation leave. . . .
[N.J.A.C. 4A:6-1.2.]

D.
Our review also considers the statutory scheme established by the legislature for the administration and operation of New Jersey's public school system, found in Title 18A. The obligation for the operation of the State's public school system is stated in our constitution, which provides: "The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in this State between the ages of five and eighteen years." N.J. Const. art. VIII, § 4, ¶ 1. To meet this mandate, the Legislature has adopted comprehensive legislation addressing all aspects of public education and granted the Commissioner of Education jurisdiction to hear and determine "all controversies and disputes arising under the school laws[.]" N.J.S.A. 18A:6-9.

III.
Plaintiff argues the trial court erred in rejecting her assertion that the vacation leave provisions of the Civil Service Act and its implementing regulation applies to school district employees. Succinctly, plaintiff maintains vacation leave for ten-month non-teaching school district employees *1078 must comport with that of other civil service employees, guided by N.J.S.A. 11A:6-3 as expanded by N.J.A.C. 4A:6-1.2. Plaintiff offers a syllogistic rationale: the regulation provides vacation leave to "full-time ten-month" political subdivision employees; she is a full-time ten-month school district employee and notes "[t]he peculiarity of a `ten[-]month employee' hardly exists in any political subdivision other than a school district"; therefore, she concludes a school district must be considered a political subdivision as used in the statute.
Integral to plaintiff's argument is that she be considered a "full-time" "political subdivision" employee as the terms are used in N.J.S.A. 11A:6-3. As to whether a ten-month employee works "full-time," plaintiff relies upon a May 3, 2005 letter from a manager of the Department of Personnel, the predecessor of the Civil Service Commission, interpreting "full-time" and "part-time" as used in N.J.A.C. 4A:6-1.2. The correspondence, directed to a security guard of a different school district, states "`Part[-]time employee' means an employee whose regular hours of duty are less than the regular and normal workweek for that job title or agency." The inquiring security guard, like the members of the class represented by plaintiff, worked "a normal workweek but only 10 months out of a 12 month period." The Civil Service Commission manager determined the inquiring security guard was not a part-time employee. Plaintiff further attaches a May 7, 2008 settlement order resolving a similar class action initiated by this inquiring security guard.
We are neither bound nor persuaded by this informal agency response or the settlement reached in a different action. Contrary to plaintiff's assertion, we determine the Act's vacation leave provisions do not equate ten-month school district employees to full-time political subdivision employees.
In construing the language used in N.J.S.A. 11A:6-3, we note the term "political subdivision" is not defined in the Act. We generally associate the term "political subdivision" with a county, city, town, or municipality. Black's Law Dictionary defines "political subdivision" as: "A division of a state that exists primarily to discharge some function of local government." Black's Law Dictionary 1179 (7th ed. 1999). Although helpful, this broad definition does not definitively resolve the question at bar. See State Dep't of Civil Serv. v. Clark, 15 N.J. 334, 341, 104 A.2d 685 (1954) (stating "[t]he principle is well established by a wealth of authority that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms"). In the absence of "universally applicable usage of the term[] . . . `political subdivision' in common parlance or law, the meaning must be drawn from the context and in light of the manifest intention of the Legislature." N.J. Ass'n of Sch. Bus. Officials v. Davy, 409 N.J.Super. 467, 485-86, 978 A.2d 295 (App.Div.2009) (citing N.J.S.A. 1:1-1).
First, looking to other legislation, we note the term "political subdivision" is most often joined with a reference to the State, that is, "the State or any of its administrative or political subdivisions." This phraseology is repeated in the hundreds of instances "political subdivisions" is found in our statutes. See e.g., N.J.S.A. 1:1-17 (discussing adoption of referendum "by the voters of the state or any political subdivision or district thereof"); N.J.S.A. 2A:14-1.1 (defining "Governmental" as "the State, its political subdivisions, any office, department, division, bureau, board, commission or public authority or public *1079 agency of the State or one of its political subdivisions"); N.J.S.A. 2C:51-2 (addressing forfeiture of public employment following criminal conviction of "[a] person holding any public office, position, or employment, . . . under the government of this State or any agency or political subdivision thereof"); N.J.S.A. 39:6-54 (exempting automotive fleets owned by "this State or any political subdivision" from regulatory process if self-insured); N.J.S.A. 47:1A-1.1 (defining a "government record," as a record maintained or received in the course of official business by an "officer, commission, agency, or authority of the State or of any political subdivision").
Even the State Constitution refers to political subdivisions coupled with a reference to the State. See N.J. Const. art. I, ¶ 19 (providing public employees with "the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their choosing"). See also N.J. Const. art. IV, § 6, ¶ 3 (limiting power of condemnation to: "Any agency or political subdivision of the State or any agency of a political subdivision thereof").
There are statutes that have chosen to include school districts in the same category as political subdivisions, but not as a political subdivision. See N.J.S.A. 2A:81-17.2a (defining "public employee" for the purposes of issued subpoenas for grand jury testimony as "any person who occupies any office, position or employment in the government of the State of New Jersey, or the several counties and municipalities thereof, or any political subdivision of the State, or a school district, or any special district, or any authority, commission, board, or any branch or agency of the public service"); N.J.S.A. 34:19-2(a) (defining "employer" in the Conscientious Employee Protection Act to include "all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof").
These latter references show the Legislature's use of the term "political subdivision" was intended to be distinct from "school district." We conclude, therefore that the two terms are not entirely synonymous.
Second, specifically examining the text of N.J.S.A. 11A:6-3 within the context of the surrounding provisions of Chapter 6, we find no support for plaintiff's argument. As stated above, N.J.S.A. 11A:6-1 empowers the Civil Service Commission to designate leave time for "State employees in the career and senior executive services[.]" That same provision states political subdivisions subject to the Act "shall prepare procedures" regarding these leaves, opening the door for local autonomy on the issue.
Newly added N.J.S.A. 11A:6-1.1, directs the Civil Service Commission to establish a voluntary furlough program, and N.J.S.A. 11A:6-2, discusses vacation leave. Each of these provisions is designated for full-time State employees. Next, N.J.S.A. 11A:6-5 allocates sick leave credits to "[f]ull-time State and political subdivision employees." N.J.S.A. 11A:6-6 provides "administrative leave" for full-time State employees and certain employees of the State's universities. N.J.S.A. 11A:6-7 grants proportional leaves for "part-time employees[,]" and properly is construed to apply to State employees. Finally, N.J.S.A. 11A:6-8, which defines "[l]eaves of absence for career, senior executive and unclassified employees in State service due to injury or illness directly caused by and arising from State employment[,]" specifically provides *1080 such leave time applies to "career and unclassified employees of a political subdivision" as "governed by rules of the political subdivision," again, granting the local government the autonomy to designate or negotiate appropriate leave.
Aligning N.J.S.A. 11A:6-3 with the statutory sections that precede and follow it, we detect no legislative intent to include ten-month school district employees within the scope of coverage of these provisions. More important, we identify a deference to local negotiations.
Even if we broaden our review to the other provisions of the Act, the references to school districts are specific, thus supporting a conclusion that had the Legislature intended application of a provision for vacation leave to the school districts it would have included such a reference. For example, N.J.S.A. 11A:9-5 sets forth procedures for the adoption of the Act by school districts, stating: "All the provisions of this chapter[, N.J.S.A. 11A:9-1 to -10,] shall apply to school districts in which the board of education is elected by the voters." Another section, N.J.S.A. 11A:3-5(g), actually exempts from the Act "political subdivision unclassified service" employees, including teaching staff as defined in N.J.S.A. 18A:1-1. The remaining provisions mentioning school districts, N.J.S.A. 11A:5-13 and 8-1, have no applicability to this matter. References similar to these in Chapter 9 are not repeated in Chapter 6 and none of the Chapter 6 leave provisions mention school district employees.
Defendant argues the issue of vacation leave for school district employees is governed by the educational statutes found in Title 18A. Defendant points out that it is a body corporate formed pursuant to the education statutes, and must comport with the provision of that Title. See N.J.S.A. 18A:10-1 (providing public schools "of each school district shall be conducted, by and under the supervision of a board of education, which shall be a body corporate and which shall be constituted and governed, as provided by this title"). Additionally, it notes the district is a State-operated school district created under the authority of the State Board of Education. N.J.S.A. 18A:7A-15.
We agree with defendant's assertion that school district employee leave falls within the purview of the broad authority granted to the Commissioner and the State Board of Education under the education statutes. Title 18A includes statutes directly addressing vacation leave procedures for school board employees. See N.J.S.A. 18A:30-9 (capping payments for accumulated vacation leave by school board employees) and -9.1 (covering the use of accrued vacation leave by school board employees). Specifically, examining N.J.S.A. 18A:30-9.1, effective on May 21, 2010, it cannot escape notice that, except for its applicability to school board employees, the statutory section is identical to N.J.S.A. 11A:6-3(e), which applies to political subdivision employees. Logic suggests therefore, that political subdivision employees under the leave sections of the Act did not include school board employees because school board employees are separately covered under Title 18A.
Plaintiff alternatively supports her interpretation of the statute by reference to the corresponding regulation, arguing the term "10-month employees" found in N.J.A.C. 4A:6-1.2(e) must refer to school district employees. Close scrutiny of this regulation defeats plaintiff's contention for several reasons.
First, on its face, the subsections of N.J.A.C. 4A:6-1.2 apply to: "[f]ull-time State employees in the career service"; "full-time local employees"; and "[p]art-time and 10-month employees." N.J.A.C. 4A:6-1.2(a), (b), (e). No reference to "full-time *1081 ten-month school district employees" is found. Contrary to plaintiff's assertion equating "10-month employees" with "school district employees," we will not read the words "school district employees" into N.J.A.C. 4A:6-1.2(e). GE Solid State, supra, 132 N.J. at 308, 625 A.2d 468.
Another panel of this court has had the occasion to examine an issue touching on this regulation and without extensive discussion, rejected the plaintiff's claimed vacation entitlements under a collectively negotiated agreement predating the 1995 takeover of the defendant Newark School District by the State Department of Education, concluding "[t]his State regulation does not relate to school district employees[.]" City Ass'n of Sup'rs and Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J.Super. 300, 317, 709 A.2d 1328 (App.Div.1998).
A second important consideration relates to the uniqueness of a public school district schedule. In order to receive state aid, public schools are mandated to provide facilities for at least 180 days during the school year. N.J.S.A. 18A:7F-9. It has been a longstanding practice to include time off from work through built-in school breaks. These recognized periods of respite are typically delineated in the applicable CNA negotiated between the district and the various negotiating units. The CNA governing plaintiff's employment for the 2008-2009 school year included such provisions. As a practical matter, school district employees know their work schedule is a function of the school district calendar. In this way the district assures it meets the days of operation necessary to comply with N.J.S.A. 18A:7F-9 to fulfill the duty owed to its students.
We conclude N.J.A.C. 4A:6-1.2(e) application to "10-month employees" is directed to those State employees working within the Department of Education or various State school facilities, who are subject to the compensation plan for State workers under the Act. In re Military Serv. Credit, supra, 378 N.J.Super. at 282, 875 A.2d 978. On the other hand, plaintiff's compensation and benefits are as dictated by the locally negotiated CNA.
Further, non-school ten-month civil service employees may be granted time off during State holidays, but leave time otherwise does not necessarily include the built-in breaks found throughout the typical school year, making it reasonable to understand why N.J.S.A. 11A:6-3 extends vacation leave to these employees. This same reason solidifies why additional vacation leave should not be extended to local school district employees.
Most important, plaintiff's ten-month employment with the school district is governed by the terms of the CNA. The bargaining associations and the school district negotiated approximately twenty-eight non-working days off. We are not troubled by the fact that the scheduled time off is the same each year. Again this is the upshot of the uniqueness of the public school calendar. Consequently, the use of uniform school breaks for students as well as teaching and non-teaching staff does not deny plaintiff vacation leave.
Following our consideration of the arguments raised in light of the applicable law, we do not conclude, as plaintiff suggests, that the unmistakable regulatory reference to ten-month employees in N.J.A.C. 4A:6-1.2(e) is directed to local district employees. Further, we are not persuaded that N.J.S.A. 11A:6-3 applies to plaintiff and those similarly situated. Rather, plaintiff's employment, as a school district employee, is governed by the terms of the negotiated CNA. The bargained for terms include times when she is working and those *1082 when she is not workingperiods most people consider vacation.
Affirmed.
NOTES
[*] Judge Harris did not participate in oral argument. He joins the opinion with counsel's consent. R. 2:13-2(b).